HAROLD DOUGLAS CHURCH

*v.*

STATE OF TENNESSEE.

(*Nashville,* December Term, 1959.)

Opinion filed March 11, 1960.

J. DAWSON FRIERSON, JR., Columbia, for plaintiff in error.

WILLIAM D. GRUGETT, Assistant Attorney General, for the State.

MR. SPECIAL JUSTICE S. A. MARABLE delivered the opinion of the Court.

The plaintiff in error, hereinafter called the defendant, was convicted under an indictment charging burglary in the third degree, and sentenced to confinement in the State penitentiary for an indeterminate period of not less than three years nor more than five years, from which he

has seasonably appealed to this Court, and assigned six grounds of error, which may be summarized as follows:

(1) That there is no material evidence to support the verdict rendered; (2) That the evidence preponderates against the verdict of the jury; (3) That certain evidence used in the case as exhibits to the testimony of Police Officer Claude Ammons, consisting of tools and articles found in the defendant's automobile and hereinafter described, was illegal evidence procured by an unreasonable search and seizure under Article 1, Section 7, of the Constitution of the State of Tennessee, and that the trial court erred in permitting the State to introduce the same; (4) That the trial court erred in permitting the State to introduce evidence incident to the breaking open of the safe in the office of the National Life and Accident Insurance Company, as same was not alleged in the indictment; (5) That the trial court erred in overruling defendant's motion, made at the conclusion of the evidence introduced by the State, for an instruction to the jury to render a verdict in favor of the defendant; and (6) That the trial court erred in the charge to the jury by charging them as to the offense of burglary in the third degree by the opening of a safe when the same was not set out in the indictment.

The following is a summary of such of the facts of this case as deemed necessary to set out herein at this time.

Sometime between 4:00 o'clock, P.M., on Friday, March 7th, and about the same hour on the next day, Saturday, March 8, 1958, an office occupied by the National Life and Accident Insurance Company located in a large building, owned by Nile Yearwood, and contain-

ing other offices, in Columbia, Tennessee, was broken into and burglarized, and an amount of $89.66 in money was stolen from a safe in said office, which safe had been forcibly broken into. This burglary was first discovered by a colored janitress, between 4:00 o'clock and 5:00 o'clock, on the afternoon of March 8, 1958, when she went into the building to clean up the various offices therein. She immediately notified Miss Carrie Sowell, the manager of the Insurance Company's office, who in turn notified the Columbia Police Department.

Two members of the police department, Assistant Chief Flannagan and Officer Wilburn, went to the Insurance Company's office that evening about 6:00 o'clock, in response to the break-in notice, and, after observing that a window in one of the rooms of the building had been broken open, and that the safe in the Insurance Company's office had also been broken into, locked the building up and decided to wait until the next morning to complete the investigation.

That same Saturday night, March 8, 1958, about 8:00 o'clock, the defendant was observed by Police Officer Henry Dawson driving his automobile on one of the streets of Columbia in such a manner as to indicate that he was under the influence of intoxicants. The officer caused the defendant to stop his car, and upon investigation, found that the defendant was drunk, or under the influence of intoxicants, and thereupon the defendant was arrested and taken to the city jail, where he was charged with driving an automobile while intoxicated, and placed in a cell in the jail. The defendant's automobile had been left on the street at the place of arrest, some four or five blocks from the jail, while the officer was taking defendant to the jail. After delivering defendant

at the jail, the officer returned and drove defendant's car to the jail and parked it on a city lot just back of the jail. When Officer Dawson stopped the defendant on the street and was in the process of placing him under arrest, he observed the defendant putting something under the seat of the automobile.

After taking defendant's automobile to the city jail, the arresting officer, Henry Dawson, accompanied by Captain Ammons and Sergeant Wilburn, of the City Police Department, made a search of the defendant's car with the aid of flashlight looking for evidence of intoxicants. A bottle partly filled with whiskey was found under a seat of the automobile. Officer Dawson then continuing his search for intoxicants unlocked the trunk of defendant's car and discovered there an assortment of tools and articles, which were subsequently used as evidence in this case. No other evidence of intoxicants, except the partly filled bottle, was found.

The tools and articles found in the trunk of the car were not immediately removed therefrom, but the car was locked and the officers went into the Police Hall or Station, it being about time for Officer Dawson to go off duty, and it being necessary for Captain Ammons to attend to some radio calls. After a very short period of time, estimated in minutes by Captain Ammons, he went back to the defendant's automobile, unlocked it, and removed the tools and articles that had been found therein, taking same into the police station. There was no second search made of the automobile, the tools and other articles being simply removed shortly after they had been discovered by the officers when the only search of the car was made. According to the testimony of Captain Ammons: "We had already sorted and laid

them out in the back end, and all I had to do was to pick them up, and I didn't have to hunt for them. We had already laid them out there and I just picked them up and brought them in the Hall from the car.''

Captain Ammons further testified that the tools and articles found in the car looked suspicious; that the police department had already received a report of the break-in at the Insurance Company's office, but had not made a complete investigation; that there had been a number of break-ins in and around Columbia about that time; and that the police department had received information that the defendant was suspected of having been involved in break-ins at other places.

In addition to the partially filled bottle of whiskey, the following articles were found in the defendant's automobile: Two flashlights, extremely large screw driver, pair of pliers, long wrench, little auger bit, two or three bars described by some of the officers as wrecking bars, hacksaw blade, key-hole saw, little punch, rubber hammer or mallet with small piece of rubber missing from one edge, pair of shoes, gloves, and tire tools. One of the bars or tools had a forked end in the shape of a ''V''. The shoes had a special type of heels, designated by one witness as orthopedic heels designed to give special support to arches of the feet, and bore the stamp of ''Biltrite'' heels. Several witnesses testified that a number of these tools and articles could be used in effecting break-ins, and could be considered as burglary tools.

The officers searched the defendant's car immediately after he had been lawfully arrested on a charge of driving an automobile while intoxicated and had been placed in jail on said charge. The search was made for evidence

of intoxicants, and the tools and articles above described were discovered in the car during said search. The officers had no search warrant in making said search.

The defendant subsequently was convicted and paid a fine for driving an automobile while intoxicated, and also a fine for possessing intoxicants.

On Sunday morning, March 9, 1958, following notification on the previous evening of the burglary of the Insurance Company's office, officers of the Columbia Police Department, including Assistant Police Chief Flannagan, Captain Ammons, Sergeant Wilburn, Officer Woody, City Detective Jack Thompson, and Claude McAfee, Agent of the Tennessee Bureau of Criminal Identification, went to the building in which the Insurance Company's office was located, arriving there about 9:00 o'clock. Officer Henry Dawson followed them immediately, and all of said officers were present when a thorough examination of the premises and investigation of the break-in was made. They found, in addition to the window that had been broken open in one of the rooms of the building, from which access could be had to a small hallway leading to the Insurance Company's office, that the door of said office, opening into said hallway, had been prized open leaving marks or imprints on the facing of the door where the door had been forced open, and, upon entering the office, saw that the knob of the office safe had been knocked off and the safe broken into, and a small piece or fragment of hard rubber was found on the floor about six or seven feet from the safe. Also observed on the wall beneath the open window was a mark apparently made by the sole or side of a shoe sliding down the wall, and outside the building were some shoe imprints on the ground.

In making this investigation, the officers found that the heel of one of the shoes taken from defendant's automobile fitted into the imprint of a shoe heel found in the soft ground outside and near the building, that the fork or prong of one of the bars found in defendant's automobile also fitted into the imprint or impression on the office door facing at the point where said door had been forced open, and that the small piece of hard rubber found on the office floor also fitted into the space on the rubber hammer or mallet, taken from said automobile, where a small piece of the hammer or mallet had been broken off.

A small section of the office door facing bearing the imprint where said door had been forced open was taken out, and, together with a small wrench or brake adjusting tool, a small steel instrument designated as a spark plug wrench, the rubber hammer or mallet, the small piece of hard rubber, and the shoes, all having been taken from defendant's automobile, except the piece of door facing and small piece of rubber found on the office floor, were sent to the Federal Bureau of Investigation, where microscopic and other tests were performed in the laboratory of the Bureau in Washington, D. C., by Jay Cothran, Jr., Special Agent of the FBI. As a result of these tests, said Special Agent found definite similarities between the imprints on the office door facing and imprints made by one of the wrenches or tools sent him. In this connection he said:

"In this case, as I have previously testified they were not sufficient to conclusively state that this tool to the exclusion of all others was used, however, there were sufficient similarities there to state that the chance that

another tool having these same characteristics is remote."

With reference to the small piece of rubber found on the floor being a broken fragment of the rubber hammer or mallet found in defendant's automobile, said Special Agent testified:

"In my opinion there is no question at all as to the fact that this fragment came from this hammer."

At the time the burglary here under consideration was committed the building in which the Insurance Company's office was located, as heretofore stated, was owned by one Nile Yearwood, but the office was being rented or leased from him by the Insurance Company which occupied and controlled the same.

The defendant did not testify in this case, but introduced his mother, his wife, and his mother-in-law for the purpose of proving an alibi.

It appears from their testimony that the defendant is forty years of age and married, but does not live regularly with his wife. She resides in Nashville, while he stays with his parents in Maury County, but visits her about every week-end. This arrangement has continued for the past two years. He has no regular employment, but assists his mother and grandmother in looking after some apartment houses in Columbia. He receives no regular salary for any of these services, but his mother says that she gives him an average of about $35 or $40 per week. She testified that he left her home on Friday, March 7, 1958, about 3:45 o'clock, to go to Nashville. His wife and mother-in-law testified that he came to their home in Nashville about 4:30 or 5:00 o'clock on the same

afternoon, stayed there all night and left the next day about 5:00 o'clock, P.M., to return to Columbia. He slept in a separate room at his wife's home that night. His wife and her mother attended a bingo party that night and stated that they were away from their home from about 7:40 o'clock until around 9:15 o'clock, P.M. They stated that after retiring that night they did not see the defendant until the next morning, but that he was in bed when they retired.

Passing over, for the present, the first two assignments of error, relating to the weight and sufficiency of the evidence, we first give consideration to the third assignment in which the defendant contends that the tools and articles, with the exception of the whiskey, found in defendant's automobile as hereinabove set out, and exhibited as evidence in this case, constituted illegal evidence procured by an unreasonable search and seizure, and that the trial court erred in permitting same to be introduced as evidence.

In response to this assignment, we find that the defendant was lawfully arrested, by a police officer of the City of Columbia, while driving his automobile on a public street of said City while in a state of intoxication. After being arrested and placed in the city jail, his automobile was carried to the jail premises and there searched by the arresting officer in the presence of other members of the City Police Department. This search was made for evidence of intoxicants, which clearly the officer had a right to do, and as a result a partially filled bottle of whiskey was found under a seat of the automobile. When first arrested or just prior thereto, the officer had seen the defendant put something under the seat of his car, which was evidently the whiskey later found

there. Continuing this search, as we think the officer was clearly justified in doing, they discovered some tools and other articles in the locked trunk of the car which aroused suspicion in the minds of some of the officers, in view of the information received shortly prior thereto of the burglary of the Insurance Company's office and of information about other break-ins in the city occurring prior thereto, and further in view of the apparently suspicious character of some of the articles found in the car, which were capable of use as burglary tools. The search here in question was not a general exploratory search, made solely in the hope of finding any evidence that might connect the defendant with any crime, but was a search incident to a lawful arrest. While not searching for evidence to connect the defendant with the burglary of the Insurance Company's office, such evidence was discovered while searching for further evidence of intoxicants in connection with defendant's arrest.

Under all of the facts appearing, we think that the search of the defendant's automobile was not an illegal or an unreasonable search, and that the tools and articles therein discovered were properly and lawfully used and admitted as evidence in the prosecution of this case. This is simply a case in which evidence of the commission of another and independent offense has been discovered by the arresting officer incidental to the exercise of a search within recognized authorized limits.

This assignment of error has been very forcefully and ably argued by the attorney for the defendant, who relies strongly upon the case of *Elliott v. State,* 173 Tenn. 203, 116 S.W.2d 1009, 1012, in support of his contention that the search in this case was unreasonable. We think that the case above cited and the present case are entirely

different and clearly distinguishable. We quote the following from the Elliott case:

"It will be borne in mind that this is not a case in which evidence of the commission of another and independent offense has been discovered by the arresting officer incidental to the exercise of a search within recognized authorized limits, as for example, in the Goodwin case, supra ([*Goodwin v. State*], 148 Tenn. 682 [257 S.W. 79]), where a concealed weapon was found on the person, or where liquor was found, as in other of our cases. We adhere to the rule heretofore followed by this Court that, when the scope of the search is confined within lawful limits, discoveries of independent offenses may be testified to in the prosecution of such offenses."

The following principle applicable to searches under a valid search warrant would also seem to apply to searches after a lawful arrest without a search warrant:

"* * * The rule that general searches are unwarranted does not prevent the executing officer, having a search warrant describing property and being lawfully on the premises, from seizing other property that he discovers being used in the commission of crime, for after a lawful entry on the premises through a search warrant, the question of whether or not an officer can make an added seizure depends upon its reasonableness. *Elliott v. State,* 173 Tenn. 203, 116 S.W.2d 1009; *United States v. Charles,* D.C., 8 F.2d 302; *Marron v. United States,* 9 Cir., 8 F.2d 251; 56 C.J., Search and Seizures, par. 164." *Robertson v. State,* 188 Tenn. 471, 474, 221 S.W.2d 520, 522.

"* * * Of course, it is well settled that where an arrest is lawfully made, the search is lawful. *Hughes v. State,* 145 Tenn. 544, 238 S.W. 588, 20 A.L.R. 639; 56 C.J., 1198." *McCanless v. Evans,* 177 Tenn. 86, 92, 146 S.W.2d 354, 356. *Van Pelt v. State,* 193 Tenn. 463, 472, 246 S.W.2d 87.

"* * * a search warrant is not necessary for every valid search and seizure, it being only unreasonable searches and seizures which come within the constitutional interdict * *" *Roberson v. United States.* 6 Cir., 165 F.2d 752; *Templeton v. State,* 196 Tenn. 90, 92, 264 S.W.2d 565, 566; *Liakas v. State,* 199 Tenn. 298, 286 S.W.2d 856.

"A search which was valid in its inception does not become unlawful merely because it uncovers evidence of a crime not contemplated by the search."

"Officers making a legal search of premises as an incident to a lawful arrest, in execution of the duly issued warrant of arrest for the means or instruments of offense for which the arrest was made, may legally seize the instruments or means of committing another and wholly unrelated offense which were unexpectedly uncovered by the search." *Harris v. United States,* 10 Cir., 151 F.2d 837, 169 A.L.R. 1413; 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399.

Concerning the subject of searches and seizures as related to the question here under review, we quote the following from an opinion prepared by Mr. Justice Burnett in the case of *Gerchman v. State,* 206 Tenn. 109, 332 S.W.2d 182, 184, and filed for publication on February 5, 1960, which we think is very applicable to this case:

"The very able argument was made at the Bar and was made in the brief that in a search warrant for specific articles that this, unless the things found are contraband or something of that kind, the getting of other evidence by reason of a lawful search warrant about another crime, should be excluded. We think unquestionably that this argument would have been good if the search warrant was used more or less as a pretense to find something else. When it is within the knowledge of the officers making the search for specific things that other things have likewise been stolen and they in the course of their legitimate search see and run into these other things clearly then it does not constitute an unreasonable search for the officers to report on the things found. Such report would be reasonable.

" 'Whether or not a search is reasonable is a judicial question. There is no formula for the determination of the reasonableness of a search and seizure, but each case is to be decided on its own facts and circumstances.' 47 Am.Jur., Page 533, Sec. 52.

"It was held by the Supreme Court of the United States in *Gouled v. United States,* 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647, that property seized under a valid search warrant may be used in the prosecution of a suspected person for a crime other than that which may have been described in the affidavit for the warrant as having been committed by him. In *Harris v. United States,* 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399, it was held among other things that if the entry on the premises is authorized and the search which follows is valid, there is nothing in the Fourth Amendment to the Federal Constitution which inhibits the seizure by

law enforcement agents of government property the possession of which is a crime, even though the officers were not aware that such property is on the premises when the search is initiated.

"We cite these two holdings merely as an illustration of what the courts have held that might be done under a valid search. Under our constitutional inhibition against an unreasonable search (Article 1, Section 7, Constitution of the State of Tennessee) a search and the finding of property as is detailed by the proof herein is clearly not unreasonable. Frankly if officers with a search of this kind, and knowing of other things having been stolen from another place, find those and made no report thereof the officers would be subject to very great criticism and they would not be doing their duty if they did not make a proper report of this finding. The finding of these articles and the introduction thereof in evidence is thus certainly not erroneous."

While the facts in the Gerchman case and the present case are not entirely similar, the principles stated in the above quotations from the Gerchman case seem to apply here.

It results from our views hereinabove expressed that the third assignment of error must be overruled.

The fourth assignment of error is likewise overruled, as it was not error for the trial court to permit the State to introduce evidence incident to the breaking open of the safe in the office of the Insurance Company. The breaking and entering into the office of the Insurance Company and the breaking open of the safe therein were parts of the same transaction and form parts of the *res*

*gestae. Mays v. State,* 145 Tenn. 118, 140-141, 238 S.W. 1096.

■ The fifth assignment of error complains of the refusal of the trial court to instruct the jury to render a verdict in favor of the defendant. This Court has repeatedly held that such is not the proper practice. *Taylor v. State,* 191 Tenn. 670, 235 S.W.2d 818; *Ivy v. State,* 197 Tenn. 650, 659, 277 S.W.2d 363. This assignment is, therefore, overruled.

The sixth assignment complains of the action of the trial judge in charging the jury as to the offense of burglary in the third degree and the opening or attempted opening of a safe, when neither burglary in the third degree nor the opening or attempted opening of a safe were mentioned in the indictment.

Section 39-904, T.C.A., defines burglary in the third degree as follows:

"Burglary in the third degree is the breaking and entering into a business house, outhouse, or any other house of another, other than dwellinghouse, with the intent to commit a felony. Every person convicted of this crime shall be imprisoned in the penitentiary for not less than three (3) years nor more than ten (10) years."

Immediately following and constituting a second paragraph of the above section of the Code, is the following language:

"Any person who, with intent to commit a crime, breaks and enters, either by day or by night, any building whether inhabited or not, and opens or attempts to open any vault, safe, or other secure place by any

means, shall be punished by imprisonment for a term of not less than three (3) nor more than twenty-one (21) years."

The pertinent part of the indictment returned by the grand jury against the defendant in this case reads as follows:

"That Harold Douglas Church in said County heretofore, to-wit: on the 7th day of March, 1958, unlawfully, feloniously and burglariously and forcibly did break and enter the business house of one National Life and Accident Insurance Company, a corporation chartered under the laws of the State of Tennessee, doing business in Columbia, Tennessee, under the management and control of Miss Carrie Sowell in the night time, with the felonious intent and purpose to commit a felony, to-wit: a larceny, by feloniously stealing, taking and carrying away the goods and chattels of the said National Life and Accident Insurance Company, a corporation chartered under the laws of the State of Tennessee, doing business in Columbia, Tennessee, then and there to be found, to-wit: $90.00 good and lawful money of the United States of America * * *"

The trial judge charged the jury in this case, in so far as the question here under consideration is concerned, as follows:

"The Court will now explain to you the law applicable to the charge in this indictment.

"The offense of Burglary in the Third Degree is thus defined: Burglary in the third degree is the breaking and entering into a business house, outhouse, or any other house of another, other than dwelling house,

with the intent to commit a felony. Every person convicted of this crime shall be imprisoned in the penitentiary for not less than three (3) years nor more than ten (10) years. Any person who, with intent to commit crime, breaks and enters, either by day or by night, any building, whether inhabited or not, and opens or attempts to open any vault, safe, or other secure place by any means, shall be punished by imprisonment for a term of not less than three (3) nor more than twenty-one (21) years.''

''When you retire to consider your verdict, you will first inquire, is the defendant guilty of the offense Burglary in Third Degree and the opening or attempted opening of a safe, as charged in the indictment. If you find from the evidence beyond a reasonable doubt that he is, your verdict should be, 'We, the jury, find the defendant guilty of Burglary in the Third Degree and opening of a safe as charged in the indictment, and fix his punishment at not more than a certain period of time between three and twenty-one years in the State Penitentiary.'

''If you fail to find the defendant guilty of this offense, or you have a reasonable doubt thereof, then you will inquire, is the defendant guilty of Burglary in Third Degree. If you find from the evidence beyond a reasonable doubt that he is, your verdict should be, 'We, the jury, find the defendant guilty of Burglary in the Third Degree and fix his punishment at not more than a certain period of time between three and ten years in the State Penitentiary.' ''

The verdict of the jury as copied into the minutes of the trial court reads as follows:

"We, the jury, find the defendant guilty as charged in the indictment and fix his punishment at not more than five years in the State Penitentiary."

However, the bill of exceptions shows that the jury reported its verdict to the court in the following language:

"We, the jury, find the defendant guilty of burglary in the third degree and opening of the safe as charged in the indictment and fix his punishment at not more than five years in the State Penitentiary."

As between the minute entry and the bill of exceptions, the bill of exceptions controls. *Helton v. State,* 195 Tenn. 36, 44, 255 S.W.2d 694.

While the words "burglary in the third degree" do not appear in the indictment, the language used therein defining the offense for which the defendant was charged is the same as language used in the Code defining the offense of burglary in the third degree. The offense was sufficiently charged in the indictment, and the omission of the words "burglary in the third degree" do not render the indictment invalid or legally objectionable. *Logan v. State,* 70 Tenn. 222.

We are of the opinion, however, that the trial judge erred in including in his charge to the jury the second paragraph of Section 39-904, T.C.A., hereinabove quoted, pertaining to the opening or attempted opening of a safe, or other secure place by any means, as the indictment did not charge the defendant with the commission of any of these acts.

The indictment charged the defendant with an offense punishable by imprisonment for a period of time not less

than three years *nor more than ten years;* whereas, the trial judge, in addition to charging the jury with reference to that offense, also included in his charge reference to another offense punishable by imprisonment for not less than three years *nor more than twenty-one years,* which latter offense was not charged in the indictment.

That the jury was confused by said charge is quite apparent, because they actually found the defendant guilty of an offense not charged in the indictment, as shown by their verdict set out in the bill of exceptions herein, and evidently fixed his punishment upon consideration of the penalty provided for the uncharged offense, which was from three to twenty-one years, and not in view of the penalty provided for the offense of burglary in the third degree, as charged in the indictment, which was from three to ten years.

It is true that the maximum period of the penalty fixed by the jury was five years, which comes within the limitations fixed for both of the offenses herein referred to, but, notwithstanding this fact, we cannot escape the conclusion that the jury had in mind the maximum of twenty-one years, and not the maximum of ten years, in arriving at their verdict.

It is argued by the State that the charge of the court herein complained of was harmless error, and that effect should be given Section 27-117, T.C.A. We are not in agreement with this insistence, as it would be an invasion of a constitutional right of the defendant, in view of all of the facts and circumstances involved.

The following statement from an opinion by Mr. Justice Burnett, in the case of *Espitia v. State,* 199 Tenn. 696, 702, 288 S.W.2d 731, 734, very clearly expresses our

view, with reference to the applicability of the Harmless Error Statute to the instant case:

"This question has given us much concern. After reading the record we have concluded that under the facts and circumstances of the instant case that this error does become reversible error and not such an error as the Harmless Error Statute, Williams' Code, sec. 10654; T.C.A. sec. 27-117, would take care of. This question of harmless or reversible error depends on the facts and circumstances of each case."

As previously stated, the indictment in this case contained no reference to the "opening or attempted opening of any vault, safe, or other secure place", about which the court charged the jury, and of which the jury found the defendant guilty.

The constitutional requirements as to the substance of an indictment are that it state "the nature and cause of the accusation." Article 1, Section 9, Constitution of the State of Tennessee.

"When not otherwise provided by statute, 'the indictment must charge the crime with certainty and precision, and must contain a complete description of such facts and circumstances as will constitute the crime.' *Pearce v. State,* 33 Tenn. (1 Sneed) 63, 67." *Tipton v. State,* 160 Tenn. 664, 670, 28 S.W.2d 635, 636; *Jordan v. State,* 156 Tenn. 509, 513, 3 S.W.2d 159.

"One indicted cannot be called upon to defend an indictment for more than is charged in the indictment." *Huffman v. State,* 200 Tenn. 487, 495, 292 S. W.2d 738, 741.

"One though cannot be convicted of more than he is charged in the indictment * * *" *Huffman v. State,* supra.

■ Criminal prosecutions cannot be sustained by intendment, but everything necessary to constitute the offense must be charged. *Steinston v. State,* 14 Tenn. 531; *Kit v. State,* 30 Tenn. 167; *Alexander v. State,* 50 Tenn. 475; *Poole v. State,* 61 Tenn. 288; *Cornell v. State,* 66 Tenn. 520; *Jones v. State,* 84 Tenn. 466.

■■ The authorities are numerous to the effect that the description of the offense charged in the indictment must be sufficient in distinctness, certainty, and precision to enable the accused to know what offense he is charged with and to understand the special nature of the charge he is called upon to answer. In this case the defendant had no notice from the indictment that he would be called upon to defend a charge of opening or attempting to open a vault, safe, or other secure place, involving a maximum penalty of twenty-one years. An instruction to the jury that they consider a charge against the defendant not covered by the indictment is clearly erroneous.

For the reasons above stated, the sixth assignment of error is sustained.

Although not specifically set out in his assignments of error, the defendant, in his brief, presents a very earnest argument that there was a fatal variance between the indictment and the proof in the following two instances: (1) That the indictment charged that the offense for which the defendant was tried occurred during the night time, and having been so charged it was necessary for the State to prove such allegation, which it is alleged the

State failed to do; and, (2) That the building in which the Insurance Company's office was located was owned by one Nile Yearwood, and there was no allegation in the indictment of such ownership.

As to the first instance, the time of the commission of the offense of burglary in the third degree, with reference to day time or night time, is immaterial and unnecessary to be charged in the indictment, as such time is not a material ingredient in the offense. Whether committed in the day time or in the night time, if the requisites of the offense, as defined by the statute, are set out in the indictment, that is all that is required, and the offense would be burglary in the third degree. The indictment in this case was sufficient to give the defendant full notice of the charge of burglary in the third degree. Since it was not necessary to prove that such an offense occurred in the night time, the inclusion of those words in the indictment would be wholly immaterial, non-prejudicial to the defendant, and not such words of limitation as to require the State to prove that the offense took place in the night time. The words "in the night time", appearing in the indictment may be disregarded as surplusage. Where an indictment charges an offense in the language of the statute, other and additional averments not required by the statute, do not necessarily change the offense into a different one. Such additional averments should be disregarded as surplusage. *Harris v. State,* 82 Tenn. 485; *Palmer v. State,* 187 Tenn. 527, 529, 216 S.W.2d 25. Also see *State v. Shaw,* 113 Tenn. 536, 538, 82 S.W. 480. The first insistence of the defendant, as hereinabove set forth, is, therefore, without merit.

With reference to the second of said insistences above mentioned, we, likewise, find no merit therein.

"It is well settled that burglary or housebreaking is not an offense against the ownership and legal title, and that ownership of the building alleged to have been burglarized not only may but should be laid in the actual occupant. 9 C.J., Burglary, sec. 80, pp. 1044, 1045; 12 C.J.S., Burglary, sec. 38." *Young v. State,* 185 Tenn. 596, 600, 206 S.W.2d 805, 806.

In the Young case, above mentioned, wherein the defendants were convicted of housebreaking and larceny, the ownership of the building involved was averred in the indictment to be in "Clifton's, Inc." The evidence showed that the building belonged to an individual but that it was occupied by Clifton's Inc., under a lease contract.

 The same situation exists in the instant case. The ownership of the business house involved was averred in the indictment to be in the National Life and Accident Insurance Company. The evidence showed that the office broken into was in a building owned by an individual, but that it was occupied by National Life and Accident Insurance Company under a rental or lease contract. There is, therefore, no fatal variance in this case, between the indictment and the proof on this point.

Since a reversal of this case becomes necessary under the defendant's sixth assignment of error, we refrain from further consideration of the first two assignments of error, and express no opinion as to the weight or sufficiency of the evidence or as to the guilt or innocence of the defendant.

The conviction of the defendant and the judgment of the Circuit Court herein is accordingly reversed, and this case is remanded to said Court for a new trial.

TOMLINSON, JUSTICE, not participating.