No. 45,655

STATE OF KANSAS, *Appellee*, v. JAMES GRIFFIN a/k/a CHARLES WIL-SON, *Appellant*.

(469 P. 2d 417)

Opinion filed May 9, 1970.

*James G. Beasley*, of Wichita, argued the cause, and *Larry D. Kirby*, of Wichita, was with him on the brief for the appellant.

*David P. Calvert*, Deputy County Attorney, argued the cause, and *Kent Frizzell*, Attorney General, and *Keith Sanborn*, County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: The defendant, James Griffin a/k/a Charles Wilson, was convicted by a jury of robbery in the first degree. (K. S. A. 21-527.) After denying a motion for a new trial, the district court sentenced defendant to confinement in the Kansas State Penitentiary for a term of not less than twenty nor more than forty-two years pursuant to K. S. A. 21-530 and 21-107a. This appeal ensued.

The testimony of the state's witnesses established that during the afternoon of August 22, 1968, the defendant, along with approximately ten to fifteen other young men, entered the Wichita Brokerage Company, a retail store, in which a wide variety of goods was displayed for sale. Defendant approached Lon Stockton, assistant manager of the store, who at the time was on the north side of the

store, and inquired about the price of a charcoal grill. Before Stockton had a chance to reply, defendant stated, "My God they're high; must be made of gold." Defendant then ordered Stockton to lie down on the floor and Stockton complied.

Michael Hardacre, an employee of the company, was near the front of the store waiting on customers when he heard the cash register ring and saw a person trying to open it. Hardacre approached the register and inquired what the person was doing, Hardacre was ordered to open the cash register. After opening the register he was hit on the head with a gun. Hardacre testified he was told to lie down on the floor and while lying on the floor saw the individual paw through the cash register. Hardacre was unable to positively identify defendant, although he testified that he thought defendant was one of the men at the scene.

Both Stockton and Hardacre testified that the group scattered over the store and loaded their arms with various items of merchandise taken from the display racks.

Stockton and Hardacre stated the men were only in the store a few minutes. About five minutes after the group had left the store a young man entered and gave Stockton the license number of an automobile. Stockton wrote the number on a piece of paper, which was admitted into evidence, but Stockton's account of the young man's statement was excluded. The license number was given to the police and as a result the automobile bearing the license was stopped shortly after the robbery. Defendant was a passenger in the automobile and was taken into custody.

In the early morning of the day after the robbery a lineup was arranged at the Wichita Police Station and defendant was positively identified by Stockton.

Bill Winegarner, an employee of the Stockyards Lumber Company adjacent to the Brokerage Company, testified that he saw two cars pull into the lumber company parking lot behind the Brokerage store and that a number of individuals got out of each car; that some of them went through the parking lot on the north side of the store and some went around the other side. In a few minutes the individuals ran back to their cars and left at a high rate of speed. He described one of the cars as a "dark green Thunder Bird," the automobile in which defendant was later arrested.

Warren Brown, a Captain in the Wichita Fire Department, testified that a police officer told him about the robbery and gave

him a description of the "green Thunder Bird." Brown had seen an automobile answering that description in a driveway about one-half block from the Fire Station. Brown saw an individual step out of the car and carry something into the house. On Brown's tip the police went to the house described by him, received permission to search and found a number of articles which were later identified as some of those taken from the Brokerage Company Store.

Defendant testified that he had taken the day off from his work for the purpose of reporting to his parole officer and to get some other things taken care of. He described his whereabouts during the day and claimed that he was never at the Wichita Brokerage Company during the day in question.

The principal point relied on by defendant in his appeal concerns the identification of him by Stockton during the trial. Defendant claims that he asked for counsel prior to the lineup and although an attorney was called and attended the lineup, defendant says he had no opportunity to consult with him at the time and was thus deprived of the effective assistance of counsel during the lineup proceedings. Defendant contends the lineup proceedings tainted the in-court identification by Stockton and when it was admitted, over his objection, reversible error was committed. In support of his position defendant cites *United States v. Wade*, 388 U. S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926; *Gilbert v. California*, 388 U. S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951, and *Stovall v. Denno*, 388 U. S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967.

After the police had taken into custody six suspects, who were thought to have been involved in the mass robbery, a lineup was arranged. Detective Harlan McClaskey was in charge of the lineup and described it in great detail in his testimony. McClaskey testified that when he informed defendant of the lineup he advised him that he was entitled to have an attorney present and that he could phone one if he wanted to. Defendant replied that he did not have an attorney. At this point, McClaskey contacted the county attorney's office and asked that a member of the Wichita Bar Association be contacted and asked to attend the lineup. Lee Woodward, an experienced member of the Wichita Bar, was called and attended the lineup.

McClaskey testified that the witnesses Hardacre and Stockton were present and that each was given a piece of paper to put their

respective names and addresses on; that they were told that if they wanted any phrase spoken by any person in the lineup to write it on the paper. McClaskey testified that he advised the witnesses that no one in the lineup would be referred to by name or in any way other than by the number of their position in the lineup.

McClaskey further testified that he in no way suggested to the witnesses to select any particular person, nor did he indicate in any way who the suspects were. McClaskey testified that no one consulted with the witnesses other than himself at any time during the lineup; that the witnesses did not consult with each other; and that they were not seated near each other in the room.

McClaskey also testified that the witnesses made their identification by writing it on the paper and that they never indicated orally within the hearing of each other how they made their identifications.

Apparently, two showup lines were viewed by the witnesses. Photographs of each line are included in the record. The photographs disclose that the lines were made up of young Negro males of approximately the same age, height and weight and that all were dressed in street clothes.

All of the details of the lineup appear to have been shown in the record. There is nothing shown which reflects any unfairness or partiality, or that any suggestion of identity was indicated to the viewing witnesses. In other words, there is nothing shown in the make-up or arrangements for the lineup which approached a violation of due process of law, nor does defendant specify anything in this regard. He merely makes the broad assertion that the presence of Mr. Woodward was insufficient to meet the demands of constitutional due process laid down in *Wade* and *Gilbert.*

After hearing the testimony of McClaskey and arguments of counsel on the point, the trial court reviewed the testimony and ruled as follows:

"THE COURT: Well, as I understand the officer's testimony, they started to conduct this lineup. He asked the defendant—this defendant Griffin if he desired an attorney at the lineup. The defendant said that he didn't have an attorney but he did desire an attorney to be present at the lineup for him. And, then, as I understand the Officer McClaskey's testimony further, Mr. Foster, a deputy county attorney, requested Mr. Lee Woodward, a member of the Wichita Bar, to be present on behalf of the defendant at the lineup and Mr. Woodward was present at the time of the lineup. And as I understand the testimony further, Mr. Woodward was present at the lineup having been

requested by Mr. Foster to be there on behalf of Mr. Griffin and he was there throughout the lineup. Mr. Woodward at the time of the lineup had not been previously appointed by any Court to represent Mr. Griffin for any purpose. It's going to be my ruling that Mr. Woodward was present at the lineup [to] represent Mr. Griffin and was there as I understand it for the sole purpose of making observations for the benefit of Mr. Griffin; and, in my opinion, the fact that he did not have a talk—an opportunity to converse with Mr. Griffin before the lineup is immaterial. Mr. Woodward, so far as this Court knows, is still a practicing attorney in this city and has been available to the defendant or to the defendant's court-appointed counsel, Mr. Kirby, ever since the date of the lineup and still is if they desire to make any use of his observation or his knowledge pertaining to the lineup. So, Mr. Kirby's motion will be at this time overruled."

While it may be argued that the lineup proceedings here do not comply with every minute requirement that could be gleaned from the opinions in *Wade* and *Gilbert*, we are firmly convinced that nothing occurred which even approaches a violation of constitutional due process. Both *Wade* and *Gilbert* involved lineup proceedings which were conducted after the defendants had been indicted and after counsel had been appointed for them. In each case, the police failed to notify counsel of the lineup and no effort was made to secure the presence of substitute counsel.

There is some authority that *Wade* and *Gilbert* apply only to post-indictment confrontations. The basis of such reasoning stems from an inference which is drawn from the language of the United States Supreme Court itself in the later case of *Simmons v. United States*, 390 U. S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967, where the court, referring to the lineup cases, stated:

". . . The rationale of those cases was that an accused is entitled to counsel at any 'critical stage of the prosecution,' and that a post-indictment lineup is such a 'critical stage.' . . ." (pp. 382, 383.)

The Supreme Court of Illinois in the case of *The People v. Palmer*, 41 Ill. 2d 571, 244 N. E. 2d 173, appears to have adopted the view that *Wade* and *Gilbert* apply only to post-indictment confrontations. A holding to the contrary is pronounced in *People v. Fowler*, 1 Cal. 3d. 335, 82 Cal. Rptr. 363, 461 P. 2d 643.

The point as presented here does not require an interpretation of *Wade* and *Gilbert* with respect to their application to a preindictment lineup, since we believe the declared purpose and intent of those decisions was substantially fulfilled by the presence of Mr. Woodward.

As we have heretofore indicated, the trial court found that Mr.

Woodward was present at the lineup on behalf of defendant and, even though he had not been appointed by any court to represent defendant, his knowledgeable observations as a lawyer were available to the defendant and to his court-appointed counsel ever since the date of the lineup.

The fear expressed in *Wade* of the inability of an accused to reconstruct an unfair lineup is groundless under the facts and circumstances shown in the instant case. We have no doubt that had there been any occurrence or circumstances suggesting unfairness or impartiality, Mr. Woodward would have been called and it would have been his duty to supply any observation pertaining thereto.

In the instant case there were ten to fifteen robbers at large. The need of early identification was urgent in order to effect a successful police investigation. To compel the investigation to await the formal court appointment of counsel would result in seriously handicapping the police in their efforts to identify and apprehend participants in the robbery.

Under the circumstances shown to exist, we believe the record clearly evidences a conscientious effort on the part of the police officers to afford due process of law and to protect the constitutional rights of defendant. Even though the need for early identification clearly indicated, the police took the time and trouble to arrange a lineup, rather than to pursue the less dependable method of showing suspects singly to persons for identification.

There is nothing in this record concerning the lineup confrontation that indicates anything unnecessarily suggestive or conducive to the irreparable mistaken identification warned against in *Stovall v. Denno*, supra.

Defendant contends testimony of McClaskey offered in rebuttal by the state was erroneously received into evidence.

After the close of the state's case, defendant took the witness stand and testified as to his whereabouts during the day of the robbery. The testimony of McClaskey on rebuttal showed that statements made by defendant soon after his arrest were inconsistent with portions of his testimony given on the witness stand. Before testifying as to the statements, McClaskey related the warnings given to defendant as to each of his constitutional rights in compliance with the requirement of *Miranda v. Arizona*, 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A. L. R. 3d 974. McClaskey testified that defendant acknowledged his full understanding, made

no request for counsel and voluntarily proceeded to give McClaskey the statements concerning his whereabouts.

Under the circumstances related, the testimony of McClaskey offered on rebuttal to impeach the testimony of defendant was a proper use of prior inconsistent statements. (*State v. Aguirre*, 167 Kan. 266, 206 P. 2d 118.)

Defendant contends the hearsay rule was violated by the admission into evidence of a piece of paper upon which Stockton had written a license number of the Ford Thunderbird in which defendant was later apprehended. The license number was given to Stockton within a few minutes (not more than five) after the robbery.

Conversation between Stockton and the young man who saw the license of the Thunderbird was not admitted. Stockton could not identify the young man and had not seen him since the robbery. Thus, the young man was unavailable as a witness. The number was written on the paper by Stockton within five minutes after the robbery without any showing of premeditation or design. We believe the paper was admissible as a part of the *res gestae*. (*Drake v. Moore*, 184 Kan. 309, 336 P. 2d 807.) Moreover, the license number was not used to prove any element of the crime but merely to explain Stockton's later action when he gave the number to the police. (*State v. Lopez*, 182 Kan. 46, 318 P. 2d 662.)

Likewise, defendant's objection to the admission of the automobile registration, showing the automobile for which the tag number was issued, is without merit. The registration merely furnished a link in the chain which led to defendant's arrest.

We have examined the instructions in their entirety and find the trial court fully and correctly instructed the jury as to all material questions of law involved in this case. Defendant's complaints with respect thereto are wholly without merit.

The verdict is supported by sufficient competent evidence and defendant's motion for a new trial was properly overruled.

The judgment is affirmed.