THOMAS LEWIS (LUKE) BROWN, Plaintiff in Error,
v. STATE OF TENNESSEE, Defendant in Error.
—470 S.W.2d 39.

March 10, 1971.

Certiorari Denied by Supreme Court July 19, 1971.

248

Donald J. Ray and R. Edward Pritchett, Tullahoma, for plaintiff in error.

David M. Pack, Attorney General, Weldon B. White, Jr., Assistant Attorney General, Nashville, Charles S. Ramsey, Jr., District Attorney General, Manchester, for defendant in error.

WALKER, P.J. From his conviction of rape and ten years' sentence, the defendant below, Thomas Lewis (Luke) Brown appeals in error assigning one error:

"The Court erred in refusing to grant the defendant's motion for a mistrial when it became obvious that a lineup was improperly conducted, and improper and prejudicial evidence was submitted to the jury."

Although the bill of exceptions was filed several days after the maximum time allowed by law, the trial court's order shows the cause for its delay. Under Chapter 475 of the Public Acts of 1970, we find good cause for the filing of the bill and our consideration of it.

■ We are confronted in this case as was the Supreme Court in Grooms v. State. 221 Tenn. 243, 426 S.W.2d 176 (1968), by the minutes of the court which affirmatively show that the defendant was convicted by a jury of thirteen members. In the case before us, however, the bill of exceptions shows that the trial judge properly dismissed the alternate juror at the conclusion of the instructions, leaving the jury composed of twelve members. When the minutes and the bill of exceptions conflict, the bill of exceptions controls. Helton v. State, 195 Tenn. 36, 255 S.W.2d 694; Church v. State, 206 Tenn. 336, 333 S.W.2d 799; Percer v. State, 118 Tenn. 765, 103 S.W. 780.

Mrs. Christine Mayfield, age 70, kept roomers in her home in Manchester, one of whom was Charles Theus, also known as "Tonk." On the afternoon or early evening of October 17, 1969, the defendant went with Theus to the Mayfield home and waited 25 minutes or 30 minutes while Theus changed his clothes. Theus says the defendant wore gray pants, a gray cap and gray sweater with two buttons on the front.

In the early hours of October 18, 1969, Mrs. Mayfield head a noise at her front door. She later found that the screen of her storm door had been cut. Before unlocking the door she asked who was there, to which the person re-

plied, "Tonk's brother." There was no light on the porch but Mrs. Mayfield had turned on the light in the house.

Thinking that the person was a brother of a roomer and one who had previously spent nights there, she opened the door and let him enter. Without objection she testified that this person was the defendant:

"Q Alright what about inside?

A Well, I had turned the light on then, inside my den.

Q Now who came in that door?

A Charlie Brown came in the door.

Q Are you talking about Thomas Brown?

A Yeah. He walked in and I looked him up and down. And I kept looking at him and I spyed (sic) two pearl buttons, one right there and one sitting down there.

Q Alright how was he dressed Mrs. Mayfield?

A Had on a dark blue sweater.

Q Was that where these buttons were you saw?

A And gray looking pants."

The defendant made an improper suggestion to her. On her refusal, he turned off the light, threw her down,

choked and raped her. He threatened to kill her if she was not quiet.

When the victim had recovered sufficiently, she notified her niece and a friend and one of them called the police. The defendant, one Yank Barnes and several other men from Ripley had been in Manchester a short time and roomed at a home a short distance from that of the victim. She swore out a warrent for Barnes, but when the officers showed her six photographs including that of Barnes she promptly told them that Barnes was not the person.

When the defendant heard of Barnes' arrest, he told Theus: ''Charlie, well, I had better get out of this town 'till this mess blows over.'' In explanation he says his mother asked him to come home. He was arrested in Ripley and brought back to Manchester.

The defendant, age 19, testifying in his own defense, denied returning to the Mayfield home after his visit there with Theus. He says he spent the evening at a cafe where he drank eight or ten cans of beer and left only once for about 15 minutes between 8:00 and 9:00 P.M. to take Theus to the Mayfield home; that he left the cafe about 11:45 P.M., went to his room and remained there all night. He relied on an alibi.

At a lineup, October 24, 1969, the victim identified the defendant from five men. On direct examination at the trial, she testified without objection to her identification of the defendant at the lineup. On cross-examination she said that she knew all of the men in the lineup. In the absence of the jury, the defendant moved for a mistrial

for this reason. He did not move to suppress the lineup testimony or the in-court identification. The court overruled the motion for a mistrial.

The defendant contends that the lineup violated his constitutional rights under United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, particularly in that he was not represented by appointed counsel.

At the lineup the T.B.I. agent advised the defendant of his constitutional rights and he said he wanted an attorney. He knew no local attorneys and the officers requested a prominent attorney to represent him. The attorney conferred with him about thirty minutes and was present during the lineup. At the trial the defense called the attorney as a witness and he testified as to his observations at the lineup.

In State v. Griffin, 205 Kan. 370, 469 P.2d 417 (1970), the defendant asked for counsel and a member of the Wichita Bar was called and attended the lineup although he was not appointed by any court to represent the defendant. The Supreme Court of Kansas held that his knowledgeable observations were available to the defendant and to his court-appointed counsel ever since the date of the lineup and that *Wade-Gilbert* requirements were satisfied.

Although the attorney called to represent the defendant was not appointed by any court, he conferred with the defendant and the defendant had the knowledgeable observations of a lawyer which were available

to him and his subsequent court-appointed counsel. The procedure here affords compliance with *Wade-Gilbert* standards.

■ The other members of the lineup were of the same complexion and from about the same age group as the defendant. There was some disparity in height and weight. Claimed disparity of age, size and appearance in the lineup does not go to the admissibility of the testimony of witnesses viewing the lineup but rather to its weight and credibility. See People v. Olbrot, 117 Ill. App.2d 366, 254 N.E.2d 569 (1969). Neither the claimed disparity nor the victim's previous knowledge of the participants required a mistrial.

■ Without objection Mrs. Mayfield testified that, regardless of the lineup or previous identification, the defendant in the courtroom seated at the counsel table was the man who raped her.

The victim had an excellent opportunity to scrutinize the defendant in the light of her home. She was able to describe his physical appearance and his clothing with some particularity and accuracy. We think the record shows that her in-court identification was based on her prior observations of the defendant, independent of any impression at the lineup. Her identification was unshaken during cross-examination. Under all these circumstances, we cannot say that the identification violated the due process standards of Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199.

The assignment of error is overruled and the judgment is affirmed.

Oliver and Galbreath, JJ., concur.