**Charles J. WILSON, a/k/a James Griffin, Appellant,**

v.

**R. J. GAFFNEY, Warden, et al., Appellees.**

No. 71–1037.

United States Court of Appeals, Tenth Circuit.

Jan. 20, 1972.

Rehearing Denied Feb. 14, 1972.

Douglas D. Johnson, Wichita, Kan., for appellant.

Vern Miller, Atty. Gen., Topeka, Kan. (Edward G. Collister, Jr., Asst. Atty. Gen., Topeka, Kan., on the brief), for appellees.

Before LEWIS, Chief Judge, and HOLLOWAY and DOYLE, Circuit Judges.

LEWIS, Chief Judge.

Petitioner, known both as Wilson and Griffin, is a Kansas state prisoner now serving a sentence imposed under the Kansas Habitual Criminal Act, K.S.A. 21–107a, after conviction of the crime of robbery in the first degree. The judgment was affirmed on appeal. State v. Griffin, 205 Kan. 370, 469 P.2d 417. He now appeals from an order of the United States District Court for the District of Kansas denying an application for a writ of habeas corpus entered without a hearing but after examination of the state trial record and the opinion of the Kansas Supreme Court. He contends that his conviction and sentence are constitutionally infirm in two regards: (a) failure to provide him with assistance of counsel prior to, and during, a police lineup, and (b) failure to provide notice of the state's intention to invoke the Habitual Criminal Act.

Petitioner's first contention probes the question of whether an accused's sixth amendment right to the assistance of counsel, as interpreted and applied in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, is satisfied by the presence of an independent attorney on behalf of an accused during a pre-indictment police lineup. This question was squarely presented to the Kansas Supreme Court on direct appeal and answered affirmatively in the excellent opinion of that court speaking through Mr. Justice Kaul. We are in complete accord with the result reached and the reasoning expressed by the Kansas Supreme Court but, since the issue appears

to be one of first impression in federal court we deem it desirable to reiterate.

On the afternoon of August 22, 1968, a Wichita store was literally invaded and robbed by a gang of young men running rampant throughout the store. Soon thereafter Wichita police arrested petitioner and a number of other persons as participants in the mass robbery and incarcerated them. Petitioner was told by police that he would be subjected to an identification lineup and that he had a right to have his attorney present at that time. Petitioner replied that he wanted an attorney but knew none. This information was relayed to the County Attorney who in turn called Mr. Lee Woodward, an experienced Wichita lawyer engaged in private practice, and requested Mr. Woodward to attend the lineup. Mr. Woodward complied with the request.

Two lineups were conducted at about 2:00 a. m. of the morning following the robbery, about fourteen hours having elapsed. The record indicates that this was the earliest opportunity because of some difficulty occurring in having one of the two viewing witnesses attend. The record also establishes that the lineups were conducted with basic fairness and in accord with the requirements of due process in every regard. Petitioner was identified from the lineups as one of the robbers and was later identified at trial by the same witness. The legality of the lineups, as such, is not questioned.

Mr. Woodward did not consult with petitioner either before or after the lineups and has not participated in any way in the case since his attendance at the lineups. He has, however, been available to petitioner's counsel for consultation or as a witness.

■ Although the many potential ramifications of the *Wade-Gilbert* rule remain to be judicially explored we consider it certain that the rationale of the cases extends beyond the particular facts of those cases to an extent determinative here. In both *Wade* and *Gilbert* the lineups were conducted after indictments had been returned; in the case at bar, the lineup occurred before petitioner had been formally charged. But surely the assistance of counsel, now established as an absolute post-indictment right does not arise or attach because of the return of an indictment. The confrontation of a lineup, said to be "peculiarly riddled with innumerable dangers and variable factors which might seriously, even crucially, derogate from a fair trial," [1] cannot have a constitutional distinction based upon the lodging of a formal charge. Every reason set forth by the Supreme Court in *Wade* (Part IV, pp. 228–239) for the assistance of counsel post-indictment has equal or more impact when projected against a pre-indictment atmosphere. We hold that petitioner had a right to counsel at the lineup here considered.

■ The more difficult question is whether Mr. Woodward's presence at the lineup satisfied the obligation owed petitioner under the sixth amendment. The accused in *Wade* and *Gilbert* had designated counsel prior to the occurrence of the lineup. Petitioner had neither appointed nor retained counsel at his lineup and practicality prevented the obtaining of either. Mr. Woodward did not appear as, nor become, a personally chosen or judicially appointed advocate for petitioner. Nor can we truly characterize Mr. Woodward as "substitute" counsel within the literal interpretation of the Supreme Court's comment that

Although the right to counsel usually means a right to the suspect's own counsel, provision for substitute counsel may be justified on the ground that the substitute counsel's presence may eliminate the hazards which render the lineup a critical stage for the presence of suspect's *own* counsel. United States v. Wade, *supra,* at 237 n. 27, 87 S.Ct. at 1938.

1. *Wade, supra,* 388 U.S. p. 228, 87 S.Ct. p. 1933.

"Substitute" counsel would seem to imply the existence of regular counsel. Petitioner had no other counsel.

Mr. Woodward appeared, however, as much more than a mere disinterested observer at the lineup. He was a member of the Bar, sworn to uphold the proper administration of justice, conscious of his obligation, aware of the reason for being present and recognized his duty to those accused, including petitioner. He was willing to perform this obligation and had the complete expertise so to do. He remained willing and available to consult with and assist regular counsel when such counsel assumed their duties. We are in complete accord with the view that "[t]he fear expressed in *Wade* of the inability of an accused to reconstruct an unfair lineup is groundless under the facts and circumstances shown in the instant case." State v. Griffin, *supra*, 469 P.2d p. 420. We hold that Mr. Woodward's voluntary service satisfied petitioner's sixth amendment rights.

Petitioner also contends that he was not given prior notice as required in order for the state to invoke sentencing under the Kansas Habitual Criminal Act. Under Kansas law this right may be waived, Lieser v. State, 199 Kan. 503, 430 P.2d 243, and is waived when the party is present at the sentencing procedure with his counsel and makes no attempt to object or deny the allegations. *Lieser, supra;* Burnett v. State, 199 Kan. 362, 429 P.2d 923.

The evidence related to the prior conviction was introduced at trial. There is nothing in the record to show that petitioner denied that the prior convictions were his, and when the state requested sentencing under the habitual criminal statute petitioner and his counsel were present but voiced no objection. We agree with the district court that this constituted waiver of any right to notice and have earlier held that due process is not abused by such procedure. Browning v. Hand, 10 Cir., 284 F.2d 346.

Affirmed.