**Millard POWELL, Plaintiff in Error,**

v.

**STATE of Tennessee, Defendant in Error.**

Court of Criminal Appeals of Tennessee.

Oct. 27, 1972.

Certiorari Denied by Supreme Court
Jan. 15, 1973.

Dale C. Workman and Allen E. Schwartz, Knoxville, for plaintiff in error.

David M. Pack, Atty. Gen., Bart Durham, Asst. Atty. Gen., Nashville, Ralph E. Harwell and Edward Wilson, Asst. Dist. Attys. Gen., Knoxville, for defendant in error.

OPINION

O'BRIEN, Judge.

Appellant, indigent, and ably represented by appointed counsel at trial and before this Court, was indicted and convicted for armed robbery. The jury fixed his punishment at not more than ten years in the Penitentiary upon which the trial court entered judgment accordingly.

Appellant makes two assignments of error which will be considered in inverse order.

1. The Court erred in overruling defendant's motion for new trial in that the weight of the evidence preponderates in favor of defendant's innocence and against the verdict of the jury.

2. The Court erred in overruling defendant's motion to suppress the evidence of the line-up and allowing testimony of Richard Mills as to identification of the defendant in

that said testimony was tainted as a result of the inherently prejudicial make-up of the line-up.

An out-of-jury hearing was held by the Court on a motion to suppress line-up evidence.

Richard Mills, service station attendant for Pride Oil Company testified, in summary, that on the date in question a man with long blonde hair, a mustache and goatee, approximately six feet tall, dressed in faded bluejeans came into the service station where he was employed. The man, when first seen, was standing in the doorway, approximately eight feet from the witness. The man held a little short-barreled gun in his right hand and ordered the witness to back up in the corner and keep his mouth shut. He had a tattoo on the hand which held the gun. The man looked around the office and requested the key to a desk drawer where the money was kept. The witness estimated the time that the man was there to be probably three or four minutes. The lights were on in the office and he could see him the whole time. After he obtained the money from the desk drawer he left. The witness described the man to the police officers. Approximately a week later he viewed a line-up at the Knox County Jail in which there were six men. He observed and picked out, without difficulty, the individual who had perpetrated the robbery, although his appearance was different in the respect that his hair was shorter and he did not have a mustache or the goatee. He identified appellant in the courtroom as the person who had robbed him.

On cross-examination he testified that a police officer had requested him to come to Knoxville to view a suspect. He was not told that the police thought they had the man that robbed him. When he arrived at the courthouse, he was informed that there would be a line-up and the police wanted him to view some men. There was no conversation about any particular person whom the police had in mind as the robber. He accompanied a detective to the jail where the line-up examination took place on an upper floor. Two or three other people were present other than those participating in the line-up. No one gave him any instructions or any information about the line-up. He walked around and looked at the men who, at his request were directed to use the words said by the robber, "Back up in the corner and keep your mouth shut". All six of the men in the line-up were dressed in similar type striped clothes. Some had short hair, some were shaven, and some were not. Their hair coloring ranged from black to blonde. To the best of the witness' recollection two of the men were blonde. He picked out appellant as the fifth man, next to the end of the line. He believed the other blonde man was third in line, but was not sure. Appellant did not have a goatee or mustache, but was not freshly shaven. He was re-examined by defense counsel on the circumstances of the robbery and reiterated that the man who robbed him had long hair, a goatee and mustache, and a "little beard", that he had a tattoo on his right hand; he got no closer than eight feet distance from the robber. That he tossed the key to the desk to the robber who caught it in his left hand, unlocked the lock and took the money out of the drawer with his left hand, and was in the station a total of about five minutes. That the robber wore a short-sleeved, old faded-looking shirt, and the best he could remember had tattoos on both arms.

A second witness to the line-up procedure testified he was a member of the Knox County Attorney General's staff. In conjunction with his duties he viewed the line-up on November 11th, 1971, and made notes of the procedure. The notes made by him at the line-up included the names, ages, and descriptions of the participants. He stated it was a substantially representative line-up, he didn't think there was anything significant about any particular member of the line-up, and no individual stood out from the others. He gave no instructions to the witness, Mills, pertaining to any particular person. The witness did

not view the line-up until after the descriptive information had been obtained. The participants were asked individually to repeat the phrase, "Back up in the corner and keep your mouth shut" and were asked to hold out their hands. The witness carefully viewed the line-up, walked up and down, heard the men speak, observed their hands, and then identified appellant without indecision. On cross-examination, he confirmed his prior testimony that three men had brown hair, one man had black hair, one man had red hair, and one peroxided blonde hair. That no one appeared more conspicious than the others in his opinion. That he knew nothing about the line-up beforehand and did not participate in choosing the participants. That two police officers were present at the line-up.

It was stipulated that Detective Maples of the Knoxville Police Department would testify appellant had been advised of his rights, and waived his right to counsel at the line-up (Exhibit No. 1 in evidence). That on the day of the line-up defendant had a mustache and a goatee, it was not full but he did have a discernible mustache and goatee, the best he remembered.

In remarks preliminary to his finding in the order overruling the motion to suppress the line-up evidence, the trial judge stated that in view of the fact appellant had signed a waiver of his right to counsel at the line-up, the evidence concerning his identification in the line-up would be admissible to the jury provided there was nothing fundamentally unfair about the line-up. The six people in the line-up ranged in height from 5'11" to 6'3"; their weights were fairly standard; and though there were distinctive characteristics about each of the participants, the mere fact that someone stands out in the line-up does not make that line-up illegal. That this was a matter for the jury's consideration on the credibility of the witness' identification in the overall process of determining whether or not he did identify the individual on the date of the alleged robbery. That the witness had a good opportunity for observation for several minutes during the course of the robbery, the place was lighted inside, he heard the robber speak and talked to him, and heard the words repeated again in the jail line-up. That there was no evidence before the Court to show anything illegal took place at the line-up, and nothing transpired at the line-up which would taint the witness' identification of the defendant at the scene of the offense. The Court found that it was a good line-up, and the witness' identification of the defendant was not tainted by anything which occurred there, and overruled the objection to the admission of identification evidence offered by the State.

We have reviewed the authorities cited by appellant, beginning with United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, the threshold case on this issue, as well as others garnered from our own research. *Wade*, supra, holds, inter alia, "that compelling accused merely to exhibit his person for observation by a prosecution witness prior to trial involves no compulsion of accused to give evidence having testimonial significance and thus is not within cover of constitutional privilege against self-incrimination". The same is true in regard to repeating words uttered by accused at time of the offense. We do not find any influence upon, or improper suggestion to the identifying witness, whose opportunity for observation at the time of the offense was substantial. The manner and mode of the line-up identification was made available at the trial through the testimony and notes of the assistant district attorney, who attended the line-up. His notes included the names and descriptions of the participants in the line-up. There is no apparent evidence in the testimony of the identifying witness that he was excited by any vengeful or spiteful motive in making his identification. The line-up occurred in a jail corridor where the accused had an equal opportunity with the identifying witness to see and hear exactly what transpired. The only complaint

made was about those allegedly distinctive features of appellant's appearance which would make him the only obvious person who could be picked out by the witness. We cannot find from the evidence submitted to the trial court any of the gross dissimilarities in appearance of the participants in the line-up which would require the Court to sustain the motion to exclude the evidence. There appeared to be no major discrepancy between the actual description of defendant at the time of the offense and his actual appearance at the time of the lineup, with the exception of the length of his hair and beard. The identification by the only witness to the robbery could be of equal force in establishing appellant's innocence as it could be in fixing his guilt. In the absence of any evidence that the confrontation was unnecessarily suggestive and conducive to irreparable mistake in identity it is clear that appellant was not denied due process of law. The assignment is overruled. United States v. Wade, supra; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178; Stovall v. Deno, 388 U.S. 293, 87 S. Ct. 1967, 18 L.Ed.2d 1199; Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L. Ed.2d 402; Brown v. State, Tenn.Cr.App., 470 S.W.2d 39.

By his first assignment, appellant predicates error on two premises, (1) the greater weight of the total evidence preponderates in favor of defendant's innocence; (2) there is no proof to support (sic) that the offense was committed with a deadly weapon.

In regard to this contention, the testimony of the witness, Mills, before the jury was substantially the same as summarized heretofore regarding the circumstances of the robbery and the identification of appellant, with the exception that the witness was not certain which hand of appellant was tattooed. He made an in-court identification of appellant as the robber.

On cross-examination photographs of appellant were admitted on cross-examination of State witness, William Russell, investigator for the Tennessee Bureau of Investigation.

A defense alibi was introduced through the testimony of Elizabeth Williams who stated in substance that on the date and approximate hour the robbery occurred, appellant was in her home some 19 miles distant from the scene of the robbery, and had resided there for several days. He previously had natural brown hair and a mustache, she was not certain whether or not he had a goatee. He had bleached his hair some several days before the date of November 2nd, 1971. She had not known appellant prior to his coming to her home, where he resided with his purported wife for a week or nine days, and had no interest in the outcome of the case.

John O. Maples, Jr., examined the photographs introduced as Exhibit No. 3, and testified that they represented appellant's appearance on the date of the line-up, with the exception of his clothing.

■■ The proposition that the greater weight of the total evidence preponderates in favor of defendant's innocence must be tested by the rule in this State, that a jury's verdict of guilty approved by the trial judge establishes the credibility of the witnesses supporting the verdict, displaces the presumption of innocence that attached to the defendant in the trial court, and raises a presumption of guilt, putting on defendant the burden of showing, on appeal, that the evidence preponderates against the verdict and in favor of innocence. Pryor v. State, 217 Tenn. 695, 400 S.W.2d 700, and cited cases. We cannot find that appellant has carried this burden and this assignment must be overruled.

Finally appellant contends there is no proof to support (sic) that the offense was committed with a deadly weapon. We have discussed this question several times recently, (Porterfield v. State, released January 22nd, 1970, cert. denied, April 6th, 1970, and James Henry Ford v. State, June

**542**

9th, 1972, cert. denied September 18th, 1972.), citing a Kentucky authority, Moore v. Commonwealth, 260 Ky. 437, 86 S.W.2d 145, which we consider to follow the law in this State on the issue:

"Under this statute, it is not necessary for the indictment to charge, or the commonwealth to prove, that the pistol was loaded and in every respect capable of being used as a firearm. To so hold would render the statute a nullity, for the very obvious reason that the victim, or intended victim, of a robbery has no opportunity to examine a firearm to ascertain whether or not it is loaded. A person assaulted with a pistol has the right to assume that it is loaded and capable of producing death and will not be required to subject himself to the danger of first endeavoring to ascertain those facts before yielding to the demands of the robber."

We hold that when a robbery is committed by the use of a pistol, and nothing appears indicating affirmatively that it was a toy or would fire only blanks, and it appeared to be a real pistol and was used as a real pistol to put the victim in fear of being shot so as to accomplish a robber's purpose, such as was true in this case, such a pistol is officially shown to be a deadly weapon to support a conviction for armed robbery. To put the burden upon the State to positively prove that a pistol so used was not a blank or a toy pistol is unrealistic and unreasonable. The fact that the pistol was displayed and appeared to be real and was thus used to effect a forcible robbery is strong and sufficient prima facie evidence of its deadliness. If the robber is to rely upon the theory that he robbed with a toy pistol, he must carry the burden of proving his theory. There is no such evidence in this case. The use of a deadly weapon was sufficiently shown.

The judgment of the trial court is affirmed.

WALKER, P. J., and DWYER, J., concur.