No. 45,236

STATE OF KANSAS, *Appellee,* v. JACK ZUMALT, *Appellant.*

(451 P. 2d 253)

Opinion filed March 8, 1969.

*William M. Mills,* of Hutchinson, argued the cause and *R. J. Gilliland, John F. Hayes,* and *Victor D. Goering,* all of Hutchinson, were with him on the brief for the appellant.

*Raymond F. Berkley,* county attorney, argued the cause, and *Kent Frizzell,* attorney general, and *Kerry J. Granger,* assistant county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: Appellant Jack Zumalt has appealed from the sentence imposed upon him as a result of his conviction by a jury of the offense of attempted murder in the first degree.

The issues presented here raise no dispute as to the material facts. A few of them will be briefly stated, however, to indicate the background for the prosecution. The alleged offense occurred at Hutchinson April 16, 1967. The state's evidence showed that appellant, who had just returned on a weekend pass from the Larned State Hospital where he had been undergoing treatment, while sitting with his wife in an automobile in front of their home, shot his wife with a pistol, wounding her in the right forearm and chest. Appellant then shot himself. Immediately preceding the shooting appellant and his wife had been discussing the possibility of divorce and arguing.

After being charged with the offense, appellant, pursuant to his

own request, was examined by a court-appointed commission of three medical doctors. On October 12, 1967, he was found to be sane and able to comprehend his position and make his defense. Jury trial commenced October 16, 1967, and concluded October 18, 1967.

Appellant's first complaint is based upon the trial court's ruling sustaining an objection to one question put to a psychologist who testified on appellant's behalf. The testimony was as follows:

"Q. Would you state your name and occupation, sir?

"A. Earl Rakestraw, psychologist.

"Q. And where are you employed, Mr. Rakestraw?

"A. Larned State Hospital.

"Q. And where did you receive your degree in psychology, Mr. Rakestraw?

"A. From Pittsburg, Kansas, State College, at Pittsburg, Kansas.

"Q. And how long have you been so employed as a psychologist?

"A. Since August of 1966.

"Q. Mr. Rakestraw, are you acquainted with the defendant, Mr. Zumalt?

"A. Yes, I am.

"Q. And would you explain to the Court and jury the basis of that acquaintance?

"A. Mr. Zumalt, again as has been pointed out or mentioned by Dr. Bacmeister, came to Larned State Hospital to the section where I was employed, to receive care and treatment.

"Q. Have you had opportunities to have conferences with Mr. Zumalt?

"A. Yes, I have.

"Q. And have you had opportunity to observe his behavorial activities there at the institution?

"A. Yes.

"Q. And from your observations and conferences with this defendant have you formed an opinion as to what his probable state of mind was on the 16th of April, 1967?

"Mr. Berkley: Your Honor, I am going to object to this question from this witness as a psychologist, he is not qualified to answer that question.

"The Court: Sustained."

Appellant contends the court erred in this limitation of the psychologist's testimony. Assuming, without deciding, that the trial court should have permitted the witness to answer the question propounded, we think, in view of other testimony on the same subject, by the same and other witnesses offered by appellant and received without objection, he suffered no prejudice in the exclusionary ruling.

Following the sustaining of the foregoing objection the witness Rakestraw continued his testimony:

"Q. Mr. Rakestraw, would you explain the nature of psychology to the jury and Court, the nature of your profession?

"A. It is a study of human behavior, a science of human behavior. That is as briefly as I can explain it.

"Q. From this experience and education you have received regarding your studies in this regard, have you been able to observe the defendant and make an analysis of his behavior pattern?

"A. Yes.

"Q. And have you an opinion as to, or have you analyzed, in your opinion, Mr. Zumalt's behavioral pattern?

"A. Yes.

"Q. If I were to place a hypothetical question to you, such as assuming the defendant did shoot at his wife in a fit of anger or rage, would you have an opinion as to how this behavioral pattern would be analyzed?

"MR. BERKLEY: I am going to object to the form of the question.

"THE COURT: Overruled.

"MR. BERKLEY: He is asking for a behavioral pattern.

"THE COURT: That question can be answered yes or no.

"A. Yes.

"Q. And will you state what that is?

"MR. BERKLEY: I object to his giving an opinion on this matter, as not being qualified.

"THE COURT: Overruled.

"A. That in this hypothetical situation the behavior would be based more on the impulse or emotion than on the intellectual processes."

Appellant called another witness, a clinical psychologist at Larned State Hospital, who testified he had treated appellant prior to April 16, 1967, and in his opinion appellant had great difficulty in controlling his impulses; this would be especially true when appellant was very angry. He further testified he did not feel he could categorize appellant as a normal person.

A psychiatrist who had treated appellant at the hospital testified upon appellant's behalf he believed appellant was prone to act on impulse but that it was possible for him to know the difference between right and wrong when so acting.

The rule is that, generally, any error in the exclusion of evidence is cured when the same, or substantially the same, evidence is, through the same or other witnesses, subsequently admitted (5A C. J. S., Appeal & Error, § 1753; 5 Am. Jur. 2d, Appeal and Error, § 806; 4 West's Kansas Digest, Criminal Law, 1170 [2]).

We think the other evidence received without objection covered the matter sought to be proved by the question to which objection was sustained, making the latter cumulative in nature. No offer of proof which would demonstrate otherwise was made. Therefore any error in the ruling complained of is harmless and will not justify reversal.

Three previous convictions of felony were shown, by reason of which appellant was sentenced under the habitual criminal act to imprisonment for a term of not less than twenty-five years. One of these was a 1949 conviction in the district court of Sedgwick county, Kansas, for assault with intent to maim, for which he was sentenced to a term of not less than one year nor more than five years. Appellant was imprisoned under this sentence. On January 5, 1953, the governor of Kansas granted him a pardon to take effect ten days prior to the expiration of his sentence. This is what is known as a citizenship pardon, authorized by K. S. A. 62-2222, and is granted on account of good conduct for the purpose of restoring a prisoner's civil rights. Appellant contends that by reason of the pardon this conviction should not have been used against him for sentencing under the habitual criminal act. This court, in accord with a majority of the jurisdictions which have considered the question (31 A. L. R. 2d 1186), has ruled adversely to appellant's contention. Our rule is that the record of a prior felony conviction may be used to increase the sentence imposed for a subsequent felony conviction in accord with the habitual criminal act despite the fact the prisoner received a pardon as to the prior conviction (*Murray v. Hand,* 187 Kan. 308, 356 P. 2d 814; *State v. Tague,* 188 Kan. 462, 363 P. 2d 454; *Johnson v. Crouse,* 191 Kan. 694, 383 P. 2d 978; see also *Johnson v. Crouse,* 224 F. Supp. 864, affirmed in 332 F. 2d 417).

This same Sedgwick county conviction was used in 1958 to enhance a sentence imposed upon appellant by the district court of Reno county, Kansas, as a result of appellant's conviction in that court of the offense of robbery in the first degree. Appellant now contends the same conviction ought not be used against him under our recidivist statute more than one time. Here again this court has ruled adversely to appellant's contention. In *Johnson v. Crouse,* 191 Kan. 694, 383 P. 2d 978, it was stated, in effect, that a prior felony conviction may be used more than once to enhance a sentence imposed under the habitual criminal act for a subsequent conviction.

This disposes of all points briefed or argued by appellant, and his conviction and sentence are affirmed.

APPROVED BY THE COURT.