No. 46,959

STATE OF KANSAS, *Appellee,* v. LARRY EUGENE McCOLLUM, *Appellant.*

(507 P. 2d 196)

Opinion filed March 3, 1973.

*Robert H. Waters,* of Waters & Sowell, of Kansas City, argued the cause and was on the brief for the appellant.

*Nick A. Tomasic,* district attorney, argued the cause, and *Vern Miller,* attorney general, and *Frank D. Menghini,* county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal by the defendant in a criminal action from a conviction of robbery in the first degree and a sentence of not less than twenty nor more than forty-two years.

On March 25, 1970, the Seven-Eleven Store located at 25th and Central in Kansas City, 'Kansas, was held up at approximately 10:00 o'clock a. m. Money was demanded and taken from the store attendants. The holdup man was described as a Negro male, unmasked, wearing sun glasses, a mustache, dressed in a trench coat and black hat and armed with a sawed-off shotgun. The only persons inside the store at the time of the holdup were two store employees, Kenneth Shemark and James Robinson. When the police responded to the call, signaled by a silent alarm triggered at the store at the time the robbery occurred, they received a complete description of the suspect. From persons outside of the store the police learned the suspect and another man (both colored) had fled the scene of the crime in an automobile described as a 1959 or 1960 Chevrolet 2-dr., either light blue or grey in color.

The description was broadcast over the police radio and within twenty minutes Larry Eugene McCollum (defendant-appellant) was apprehended riding in an automobile which fit the description given and containing all of the above described items. Officer Vincent Rodriguez while in a patrol car spotted the suspect's vehicle and apprehended the two occupants of the vehicle.

At approximately 10:35 o'clock a. m. the same morning, the police conducted a lineup of five persons, one of whom was the appellant. Mr. Shemark made a positive identification of the appellant after viewing the lineup.

Detective Charles Steele testified he read both suspects (the appellant and the driver, Ronald Johnson) their rights when they arrived at the police station. Detective Steele also read the suspects a waiver of rights form which the appellant refused to sign.

Thereafter a complaint was filed in the magistrate court charging the appellant with first degree robbery. A preliminary hearing, at which the appellant was represented by counsel, was conducted on the 16th day of April, 1970, and the appellant was bound over for trial in the district court.

On the 21st day of July, 1970, the appellant was arraigned before the district court of Wyandotte County, Kansas. At that time the state advised the appellant it intended to invoke the habitual criminal act. On July 30, 1970, the appellant, through his attorney, filed motions to suppress physical evidence and evidence pertaining to the lineup identification. Both motions were denied after a hearing held on October 2, 1970.

The appellant contends the trial court erred in not discharging him because he was not brought to trial within ninety days after arraignment on July 21, 1970.

Being unable to post bond after arraignment, the appellant was held in custody. Therefore, under K. S. A. 1972 Supp. 22-3402 the state was required to try the appellant within ninety days after his arraignment on the charge, unless the time for trial was extended for reasons authorized by the statute.

While the offense with which the appellant is here charged was committed prior to July 1, 1970, the effective date of the new code of criminal procedure, he was not arraigned until after July 1, 1970, and he is entitled to proceed under the new code of criminal procedure as authorized by K. S. A. 1972 Supp. 22-4602 (1). The appellant asserted the provisions of K. S. A. 1972 Supp. 22-3402 in the trial court, and he did not elect to proceed under the repealed code

of criminal procedure. (See *State v. Davis,* 209 Kan. 225, 495 P. 2d 965.)

The provisions of K. S. A. 1972 Supp. 22-3402, insofar as material to this appeal, read as follows:

"(1) If any person charged with a crime and held in jail solely by reason thereof shall not be brought to trial within ninety days after his arraignment on the charge, he shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant, or a continuance shall be ordered by the court under subsection (3)."

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"(3) The time for trial may be extended beyond the limitations of subsections (1) and (2) of this section for any of the following reasons:  .  .  .

"(*d*) Because of other cases pending for trial, the court does not have sufficient time to commence the trial of the case within the time fixed for trial by this section. Not more than one continuance of not more than thirty days may be ordered upon this ground."

The above statute has been construed and applied by this court in *State v. Davis,* supra, and *State v. Sanders,* 209 Kan. 231, 495 P. 2d 1023.

Here the appellant was arraigned on July 21, 1970, and the ninety day period would have expired on the 20th day of October, 1970.

On the 2nd day of October, 1970, at the hearing on the appellant's motions to suppress evidence concerning his identification at the lineup and physical evidence seized in the case, he was represented by a retained counsel, and the county attorney informed the court as to a possible trial setting. He stated:

"Your Honor, I can say this, we are set for the 5th and the 19th. The 12th I understand the judges aren't going to be around and I imagine it will be immediately after the week of the 19th sometime."

The judicial conference was scheduled for the entire week of October 12, 1970, which meant that there would be no judges available to hear any cases that week.

After the denial of the appellant's motions by the trial court on October 2, 1970, he again appeared in court with his retained attorney on the 5th day of October, 1970. At that time his retained attorney orally moved the court for permission to withdraw from further representation of the appellant because of the appellant's dissatisfaction with his services. When the trial court asked the appellant to state the reason for the difficulty between them, the appellant answered, "I just don't feel Mr. Chambers has given me adequate and effective representation."

The appellant then stated to the court he had no funds with which to hire another attorney, and that he was in custody and not working. He had no objection to Mr. Chambers withdrawing at the time, and requested that he withdraw.

The prosecuting attorney had previously informed the trial court as to the possible setting of the case for trial on the 26th day of October, 1970. The trial court then said:

"The Court: Well, as to your reference to the 26th, it seems to me that three weeks would give another attorney plenty of time to prepare this matter. Today is the 5th.

"The Defendant: Your Honor, I spoke to another attorney this morning about would he take my case, and I explained my particular situation to him, and he asked me to ask Your Honor or one of the other judges to appoint him.

"The Court: Who is it you have talked to?

"The Defendant: Mr. Robert Foster.

"The Court: Did he say that he would consent to an appointment?

"The Defendant: Yes, sir. And he told me to ask to have him appointed.

"The Court: Well, I will order him appointed, then, as of this date with the specific understanding that he will go to trial on the 26th on these charges, and Mr. Chambers will be allowed to withdraw from any further representation in this case.

"Mr. Chambers: Thank you, Your Honor."

The foregoing discharge of the appellant's retained attorney occurred on the 76th day after his arraignment, and the trial court set the 26th day of October, 1970, as the trial date, which would have been the 96th day after arraignment.

On October 16, 1970, the 85th day after arraignment, appellant's appointed counsel in open court moved for a speedy trial. At the hearing conducted on that date the prosecuting attorney informed the court the appellant's case was set for trial on the 26th day of October, but that the state was prepared to go to trial any time, "today if necessary." The prosecuting attorney further informed the court that he did have cases set for trial all of next week (the week of October, 19th), and that the state was allowed a statutory thirty day continuance because of other cases pending.

The trial court granted the state's request for the continuance and set the trial for the week of October 26, 1970. By agreement the actual trial was conducted on October 28, 1970. The jury was unable to agree upon a verdict after the appellant's first trial, and he was subsequently retried on January 18, 1971. After the second trial the jury found the appellant guilty of robbery in the first degree (K. S. A. 21-527), whereupon the court sentenced the ap-

pellant to confinement and hard labor for not less than twenty nor more than forty-two years pursuant to K. S. A. 21-530 and the habitual criminal act.

No point is asserted on appeal concerning delay after the first trial on October 28, 1970, and the reasons for the delay do not appear in the record.

Here the state specifically requested a continuance *within the ninety day period from arraignment,* because of other cases set on the docket, and the trial judge, because of the crowded docket, ordered the case continued until the 26th day of October, 1970, which was six days past the ninety day period. Subsequently, the case was continued by agreement to the 28th day of October, 1970. Furthermore, it may be said the delay in setting the case for trial was the fault of the appellant, when he discharged his retained attorney two weeks prior to the expiration of the ninety day period and requested that the trial court appoint another attorney for him. (See *State v. Sanders,* 209 Kan. 231, 495 P. 2d 1023.) Circumstances under which the trial judge set the case on the 26th of October, just three weeks after new counsel was appointed, indicate that it was set by agreement.

Under the foregoing circumstances the trial court did not err in refusing to discharge the appellant on the ground that he was not afforded a speedy trial as required by 22-3402, *supra.*

The appellant next contends the trial court erred in receiving and considering, over objection of appellant's counsel, identification of the appellant that was the result of an illegal, unfair and prejudicial lineup.

The appellant refused to sign a waiver concerning the lineup, but upon request he was permitted to telephone an attorney to have him present for the lineup. Upon inquiry by detective Tom Daily, who conducted the lineup, the appellant informed him that his attorney could not make it.

The lineup was conducted at 10:35 a. m., only thirty-five minutes after the offense was committed, prior to the time judicial proceedings were initiated against him.

The appellant asserts the five Negro males in the lineup, one 5′ 8″ and weighing 300 pounds, and another 5′ 10″ and weighing 175 pounds, made the lineup unduly suggestive because he was only 5′ 7″ weighing 147 pounds. The other two males in the lineup were 5′ 9″ weighing 140 pounds and 5′ 8″ weighing 156 pounds. These two were rather close to the appellant in height and weight.

Nothing in the record indicates the confrontation in the lineup was unnecessarily suggestive or conducive to the irreparable mistaken identification the United States Supreme Court warned about in *Stovall v. Denno,* 388 U. S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967. The details of the lineup are described in the record, and the manner in which it was conducted is substantially the same as the lineup described in *State v. Griffin,* 205 Kan. 370, 469 P. 2d 417.

While it may be argued the lineup proceedings here do not comply with every minute requirement that could be gleaned from the opinions in *United States v. Wade,* 388 U. S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926; and *Gilbert v. California,* 388 U. S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951, we are convinced nothing occurred which even approaches a violation of constitutional due process.

Both *Wade* and *Gilbert* involved lineup proceedings which were conducted *after the defendants had been indicted* and after counsel had been appointed for them. In each case, the police failed to notify counsel of the lineup and no effort was made to secure the presence of substitute counsel.

Recently the United States Supreme Court in *Kirby v. Illinois,* 406 U. S. 682, 32 L. Ed. 2d 411, 92 S. Ct. 1877, refused to extend the *Wade-Gilbert per se* exclusionary rule to identification testimony based upon a police station lineup that took place *before* the defendant had been indicted or otherwise formally charged with any criminal offense. In *Wade* and *Gilbert* it was held that a post-indictment pretrial lineup at which the accused is exhibited to identifying witnesses is a critical stage of the criminal prosecution; that police conduct of such a lineup without notice to and in the absence of his counsel denies the accused his Sixth and Fourteenth Amendment right to counsel and calls in question the admissibility at trial of the in-court identifications of the accused by witnesses who attended the lineup. Those cases further held that no in-court identifications are admissible in evidence if their source is a lineup conducted in violation of this constitutional standard. The court said only a *per se* exclusionary rule as to such testimony can be an effective sanction.

In *Kirby v. Illinois,* supra, the court held that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him. Our court has heretofore recognized the limitation in *Wade* and *Gilbert.* (*State v. Meeks,* 205 Kan. 261, 469 P. 2d

302; *State v. Griffin,* supra, and *State v. Kelly,* 210 Kan. 192, 499 P. 2d 1040.)

*Powell v. Alabama,* 287 U. S. 45, 57, 77 L. Ed. 158, 53 S. Ct. 55, makes it clear that the right to counsel attaches at the time of arraignment, and the court has recently held that it exists also at the time of a preliminary hearing (*Coleman v. Alabama,* 399 U. S. 1, 26 L. Ed. 2d 387, 90 S. Ct. 1999).

Clearly, in the instant case, adversary judicial proceedings had not been initiated against the appellant when the lineup proceedings here in question were conducted. While the appellant here was given an opportunity to obtain representation and the presence of counsel for the lineup, the police were not precluded by any legal restraint from conducting the lineup in the absence of counsel for the appellant.

As the court pointed out in *Wade,* it is always necessary to scrutinize *any* pretrial confrontation. The due process clause of the Fifth and Fourteenth Amendments forbids a lineup that is unnecessarily suggestive and conducive to irreparable mistaken identification. (*Stovall v. Denno,* supra, and *Foster v. California,* 394 U. S. 440, 22 L. Ed. 2d 402, 89 S. Ct. 1127.)

". . . When a person has not been formally charged with a criminal offense, *Stovall* strikes the appropriate constitutional balance between the right of a suspect to be protected from prejudicial procedures and the interest of society in the prompt and purposeful investigation of an unsolved crime." (*Kirby v. Illinois,* supra.) (p. 691.)

The trial court heard the motion of the appellant concerning the lineup identification prior to trial, hearing the testimony of the various officers, and it held the lineup was not improper and accordingly, that the testimony concerning the identification of the appellant and the lineup could be presented to the jury at the trial.

Testimony of the various officers concerning the lineup disclosed that five Negro males were exhibited in the lineup. A one-way mirror was used and the officer on the outside testified he gave each witness a form with little square boxes. He told each witness, if he could make a positive identification, to put an "X" in the appropriate box. He did not suggest any names, nor did he in any way suggest who the witness should identify. Each of the men in the lineup in turn stepped forward to the one-way mirror, first in street clothes, then a second time a few minutes later in the trench coat and the hat that had been found in the suspects' vehicle at the time

the suspects were apprehended. Mr. Shemark positively identified the appellant by the number of his position in the lineup.

Mr. Shemark, manager of the Seven-Eleven Store, and the victim of the robbery, testified that around 10:00 o'clock a. m. on the day in question he turned around and noticed a man standing there with a shotgun, that he demanded money from the register and then fled. He further testified that he was three or four feet from the robber, that the robber was directly in front of him, that nothing was blocking his view, that the robber was not masked and that he could see his face clearly, and that there were no other customers in the store. When Mr. Shemark was asked to identify the robber in the courtroom he pointed to the appellant. When asked why he was positive of the in-court identification, he replied:

"O.K. Like I say, I was face-to-face with this man for two or three minutes, and I looked at him closely as I could, so if he was picked up I could identify him. When the police came in and said they had arrested a suspect, they asked me to come down for a lineup, and I went down and viewed the lineup and picked this man out of the lineup."

When Mr. Shemark was asked why he picked the defendant out, he replied: "Because he is the one that held me up."

Two other persons viewed this lineup—a clerk in the store, James Robinson, and a retired gentleman who happened to see the appellant flee after the robbery. The latter obtained the description of the car and the license number of the car in which the robber fled. Both of these men said the robber passed them so fast that they could not see his face.

The appellant contends the lineup proceedings described above tainted the in-court identification by Mr. Shemark, and when it was admitted into evidence, reversible error was committed.

On the record here presented this point is not well taken. Here the robbers were caught within twenty minutes after the holdup, and the police, in an attempt to afford due process of law and protect the constitutional rights of the appellant, arranged for a lineup.

The victim's in-court identification was based on his full opportunity at the time the crime was committed to observe the appellant. The record discloses the victim's in-court identification of the appellant was independent of the lineup. Accordingly, the trial court did not err in admitting the testimony concerning the lineup.

The appellant next contends the trial court erred in receiving the physical evidence introduced by the state because it was obtained by unlawful search and seizure. The appellant asserts

that the search of the vehicle in which he was riding was made prior to an arrest of the appellant; and further that there was no probable cause for the search of the vehicle.

It must be conceded the search in this case was made prior to an arrest of the appellant, but the record clearly discloses the officers making the search had probable cause to make it.

The appellant concedes under *State v. McMillin*, 206 Kan. 3, 476 P. 2d 612, that automobiles, because of their mobility, may be searched without a warrant upon facts not justifying a warrantless search of a house or other building. But he contends the officer making the search must have probable or reasonable cause to believe he will find evidence pertaining to a crime before beginning the warrantless search.

Kenneth Shemark, the manager of the Seven-Eleven Store who was robbed on March 25, 1970, testified that about 10:00 o'clock a. m. on that date while he was by the cash register, an unmasked Negro male with a sawed-off shotgun, about 5′ 6″ or 5′ 8″ tall, wearing a trench coat, black hat and with a moustache, robbed him. When he took the money out of the register, he gave the robber tens, fives and one-dollar bills, and in doing so he triggered the silent police alarm. Within five minutes of the robbery the police arrived at the store and received a complete description of the robber and the vehicle used by the robber.

Detective Charles Steele testified the descriptions of the vehicle and the robber were immediately broadcast to patrol cars in the field and that within ten minutes after the broadcast the suspects' auto was stopped.

Officer Vincent Rodriguez testified he heard the description of the robber's auto broadcast on the police radio and that a car fitting that description passed him shortly after the description was broadcast. He followed the vehicle for some distance and finally pulled in behind it, when it stopped at the curb near the 10th and Lafayette Street intersection. The appellant was sitting in the back seat. When the appellant got out of the car and started walking toward a house, Officer Rodriguez called him back and directed him and the driver, Ronald Johnson, to the rear of the vehicle. At this point other officers arrived on the scene.

After checking the suspects' identification, Officer Rodriguez asked them for permission to look in the trunk of their car. Neither suspect answered, but Johnson turned around and opened

the trunk for the officer. Nothing was found in the trunk. However, when Officer Rodriguez and another officer began looking through the passenger section of the vehicle, he noticed part of a five dollar bill hanging from the back seat of the vehicle, sticking out on the passenger side where the back seat rests against the floor. Upon lifting the rear seat, Officer Rodriguez observed a sawed-off shotgun and a wad of money. Later, testimony established the wad of money contained approximately $41 in ten, five and one-dollar bills. A trench coat and a black hat were also found in the vehicle searched.

All of the foregoing property taken by the police officers from the vehicle searched was identified in court by the victim of the robbery, Mr. Shemark, before it was admitted into evidence.

The ability of an automobile to be moved to an unknown location or beyond the jurisdictional reach of the officer makes resort to a search warrant impractical in some cases. In such cases, if an officer has reasonable cause to believe the conveyance contains contraband or items which offend against the law, the officer may conduct a reasonable warrantless search of the vehicle. (*Carroll v. United States*, 267 U. S. 132, 69 L. Ed. 543, 45 S. Ct. 280; and *State v. Robinson*, 203 Kan. 304, 454 P. 2d 527.)

The authority to search in such cases is not necessarily conditioned on the right to arrest or the existence of a search warrant. It may be dependent on reasonable cause which an officer has for belief that contents of the vehicle offend against the law. (*State v. Robinson*, supra, and cases cited therein.)

This court recently said,

". . . [I]f there is probable cause to search a car such search need not be 'incidental to' or 'contemporaneous with' an arrest, but may be made wholly independently of any arrest at all. . . ." (*State v. Undorf*, 210 Kan. 1, 7, 499 P. 2d 1105.)

It has been recognized that confusion has arisen between the right to search incident to an arrest and the right to search an automobile on probable cause. Thus, in *State v. Undorf*, supra, this court cited *Chambers v. Maroney*, 399 U. S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975, for the proposition that the same knowledge providing probable cause for an arrest may also furnish probable cause for a search.

Here the record discloses Officer Rodriguez had reasonable cause for stopping the vehicle and searching it, because he believed that the contents of the automobile offended against the law, and

that the occupants were suspects in the robbery committed at the Seven-Eeven Store in Kansas City, Kansas, within the past thirty minutes. By reason thereof the subsequent search by the officers was not unreasonable, and the evidence was admissible.

The appellant contends the trial court erred in failing to declare a mistrial resulting from prejudicial statements made by the state in its opening argument regarding a prior conviction.

As heretofore noted the appellant's first trial on October 28, 1970, resulted in a mistrial because the jury could not reach a verdict. At the first trial evidence was offered by the state, and admitted, which showed that on a previous occasion the appellant had been convicted of armed robbery.

At the second trial, which resulted in the appellant's conviction, the prosecutor in his opening statement told the jury that, ". . . [W]e intend to prove by documentary proof, a prior conviction that this man had." Thereupon counsel for the appellant objected and the trial judge instructed the jury,

"I will say this to you, gentlemen of the jury: I don't know if they can prove that Mr. McCollum committed a previous crime or not. I don't even know if they can prove he was out at that store on that day. I have cautioned you that none of this is evidence yet; it is simply his statement of what he thinks he is going to be able to prove. Keep that in mind, if you will."

When the record of the prior conviction was marked to be offered as evidence, the trial judge stated he thought it was unfair, but that the Supreme Court had said prior convictions could be admitted. The judge took the matter under advisement and later ruled such evidence to be inadmissible stating he still did not think it was fair.

In *State v. Campbell*, 210 Kan. 265, 279, 500 P. 2d 21, this court said:

"Proof which the prosecuting attorney anticipates in the trial of a case frequently fails to come up to expectations, and so the tendency is to permit a prosecuting attorney a reasonable latitude in stating to the jury the facts he proposes to prove. Where no substantial prejudice results, and there is nothing to show that the prosecuting attorney acted in bad faith, appellate courts usually refuse to reverse or remand a case for a new trial because of a reference by the prosecuting attorney to matters which he subsequently made no attempt to prove, or for one reason or another was unable to prove."

Here the record discloses no showing of bad faith on the part of the prosecutor. In the second trial exactly the same facts existed as in the first trial which resulted in a hung jury. At the first trial the record of the prior conviction was admitted into evidence by an-

other trial judge. (See, K. S. A. 60-455.) In the second trial it was not admitted in evidence because the trial judge did not think it was fair.

On the record presented we cannot say the appellant was prejudiced by the prosecutor's opening statement. The trial court properly instructed the jury when the opening statement was made and again at the conclusion of the evidence.

The appellant asserts the trial court erred in receiving the verdict of the jury because it was unsupported by the evidence. The appellant further complains that his guilt was not proved beyond a reasonable doubt.

In considering the sufficiency of evidence to sustain a conviction, this court looks only to the evidence in favor of the verdict, it does not weigh the evidence and if the essential elements of the charge are sustained by any competent evidence the conviction stands. (*State v. Roy,* 203 Kan. 606, 455 P. 2d 512, *State v. Dill,* 182 Kan. 174, 319 P. 2d 172.)

"On appellate review the question is not whether the evidence establishes guilt beyond a reasonable doubt but whether the evidence was sufficient to form the basis for a reasonable inference of guilt." (*State v. Austin,* 209 Kan. 4, Syl. 2, 495 P. 2d 960, and cases cited therein.)

A review of the record discloses the evidence supports the finding of the jury that the offense charged was committed and that the appellant committed it. Therefore, the trial court did not err in overruling the appellant's motion for discharge at the conclusion of the trial.

The judgment of the lower court is affirmed.