No. 47,423

STATE OF KANSAS, *Appellee*, v. PAUL LESLIE SOVERNS, *Appellant*.

(529 P. 2d 181)

Opinion filed December 7, 1974.

*Michael J. Peterson*, of Kansas City, argued the cause and was on the brief for the appellant.

*Nick A. Tomasic*, district attorney, argued the cause, and *Vern Miller*, attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Paul Leslie Soverns appeals from his conviction on a charge of first degree murder and a sentence of life imprisonment. He was convicted of killing an eleven year old girl while taking indecent liberties with the child. The defendant questions the sufficiency of the evidence to support the verdict.

It is well settled that the credibility of witnesses will not be passed upon and conflicting evidence will not be weighed on appellate review. (*State v. Griffin*, 210 Kan. 729, 504 P. 2d 150.) A defendant has no cause to complain if the jury believed the state's witnesses rather than his own. (*State v. Mae McLaughlin*, 207 Kan. 584, 485 P. 2d 1352.) In considering the sufficiency of evidence to sustain a conviction, this court looks only to the evidence which supports the verdict. It does not weigh the evidence and if the essential elements of the charge are supported by any competent evidence, the conviction must stand. (*State v. McCollum*, 211 Kan. 631, 507 P. 2d 196.) On appellate review the question is not whether the evidence establishes guilt beyond a reasonable doubt, but whether the evidence was sufficient to form the basis for a reasonable inference of guilt. (*State v. Austin*, 209 Kan. 4, 495 P. 2d 960.)

The evidence presented by the state consisted of a confession by the accused, testimony of the sister of the victim who was present

in the defendant's apartment when the child was molested and died, testimony of a doctor who examined the body of the child, and testimony of various police officers who took part in the investigation and interrogation of the defendant.

The doctor testified concerning the condition of the child's sex organs saying he found blood issuing from the vagina, bruises around the edges of the hymen at the entrance to the vagina and blood and bruises three inches inside the vulva. It was his opinion the bruises could have been caused by a finger or penis forced into the vagina. He further testified that during the autopsy he found characteristics generally found in persons who die of asphyxia or lack of oxygen, that he noticed a wound around the front of the neck which appeared to have been caused by a ligature and that in his professional medical opinion the cause of death was strangulation by ligature.

Other evidence which was developed during the trial indicated that the defendant had been having an affair with the victim's older sister, a married woman who was eight months pregnant at the time of this occurrence. The older sister and the defendant were riding around in defendant's car when they saw the younger sister and offered her a ride. The three went to defendant's apartment where the eleven year old sister was sexually molested and died. The evidence is conflicting as to what actually transpired in the apartment and as to the extent of the older sister's participation. From the confession of the defendant and the testimony of the older sister the jury could reasonably find that the defendant did sexually molest the eleven year old girl and did strangle her with a rope to quiet her screams. The defendant and the older sister placed the body in defendant's car and drove to a secluded area where the body was left. The body was discovered the following morning, November 9, 1971, by an employee of Nutrena Mills. The evidence is clearly sufficient to sustain a conviction.

The main thrust of this appeal is directed at the written confession of the defendant, which confession was admitted in evidence during the trial after a hearing outside the presence of the jury. No question is raised concerning the procedure followed in the trial court before admitting the confession into evidence. Proper procedural safeguards were followed. See *State v. Milow,* 199 Kan. 576, 433 P. 2d 538. No question has been raised in this appeal concerning the court's guiding instruction concerning the written confession. The question raised is whether or not defendant's confession was

voluntary, a product of his free will. He contends it was brought about by pressure and coercion applied by the officers who interrogated him.

In a criminal proceeding a previous statement made by the accused constituting a confession of guilt of the crime charged is not admissible in evidence unless it appears that the confession was entirely voluntary. If such confession is made while the accused is under restraint by law enforcement officials, evidence of the confession is not admissible on the trial, unless it is made to clearly appear that the accused was fully advised of his constitutional rights, and after being so advised, the confession of guilt was freely and voluntarily made under circumstances that afforded no undue influence in procuring the confession. (*State v. Milow*, Syl. ¶ 1, supra; *State v. Lekas*, 201 Kan. 579, 442 P. 2d 11.)

Coercion in obtaining a confession from an accused can be mental as well as physical. In determining the voluntariness of a confession of crime, the question in each case is whether the defendant's will was overborne at the time of the confession; if so, the confession cannot be deemed the product of a rational intellect and a free will. (*State v. McVeigh*, 213 Kan. 432, 516 P. 2d 918.) In determining the admissibility of a statement of the defendant obtained during custodial interrogation the trial court must weigh any conflicting evidence and make its findings based on the totality of the circumstances. If there is substantial competent evidence to support the trial court's findings that the defendant voluntarily, knowingly and intelligently waived his Fifth and Sixth Amendment rights, such findings will not be disturbed on appellate review. (*State v. Melton*, 207 Kan. 700, 486 P. 2d 1361.) In a criminal case there is a presumption of sanity and if an accused attacks the voluntariness of a confession on the ground he was insane when the confession was given it is incumbent on the accused to overcome that presumption by competent evidence and to reasonably substantiate his claim of insanity at the time the confession was given. (*State v. Harden*, 206 Kan. 365, 480 P. 2d 53.)

Now let us examine the facts and circumstances as they reasonably appear in the evidence introduced on the motion to suppress the confession. The defendant was taken into custody around 11:00 o'clock on the morning of November 9, 1971. He was advised of his rights under *Miranda* guidelines and signed a waiver of rights. He does not now argue that he did not tell the police what

was contained in the written statement. He does not dispute the fact that he was advised of his rights and signed a written waiver of rights. He contends the written confession was not a product of his own free will, that the confession was brought about by pressure and coercion by the police officers who interrogated him at the station and that it was given to protect the older sister.

Although defendant was taken into custody in the morning and did not sign the written confession until approximately 8:00 o'clock in the evening, there was testimony from the officers to the effect that the defendant was not questioned and made no statement until around 5:30 in the evening. In the morning when defendant was first brought to the police station Officer Hall, who was in charge, asked and received permission to take hair samples from the defendant. Officer Hall then left because he had to give testimony in court. The defendant remained in Hall's office. He was not handcuffed, there were no bars on the windows and various officers were in and out of the room on other matters for a period of possibly two hours. A TV dinner was obtained for the defendant when he said he was hungry. Defendant ate it. Around 3:00 p. m. the defendant accompanied the officers to his home where he talked to his mother. They picked up the car and returned it to the police station. The car was searched after permission for the search was given by the defendant.

Officer Hall returned to the police station at 5:30 in the evening and, after again advising defendant of his constitutional rights, he began to question the defendant concerning the homicide of the eleven year old girl. During the questioning defendant broke down sobbing and stated he had problems with a girl friend and admitted he had killed the little girl. He said he did not want to make a written statement until he had talked with his mother. He did not ask for an attorney. At that time questioning ceased and defendant was taken to his mother's home where he again talked with his mother and with his father and he again broke down crying. He told his mother he was involved in the death of the young girl. Officer Hall testified he invited the parents to come to the police station to be present where defendant's statement would be taken. The parents declined. On the way back to the station the defendant and the officers stopped at a cafeteria for 30 or 40 minutes. The defendant selected and ate his food, he was not crying and he discussed general subjects not connected with the crime. He was not handcuffed, ate in the public area and

did not at any time appear violent or emotionally upset. Thereafter they returned to the police station and in the presence of a secretary questions were asked and the defendant answered them. These were taken down in shorthand and a statement was then typed. The defendant read the statement, interposed no objections to it, and at the request of the officers defendant initialed each page and signed the statement. It was witnessed by three officers.

The statement covers six pages of the record. A general summary of the contents should be sufficient for our purposes. The statement is in question and answer form giving the usual preliminary information. The defendant was then asked concerning his constitutional rights and he stated that he had been advised of his right to remain silent, that he knew any statement he might make could be used against him in court, that he had been advised he had a right to have an attorney present, either retained by him or appointed by the court, and that the attorney could be present while he was being questioned. Defendant then admitted taking the little girl to his apartment and said: ". . . I got to playing with her. She started to cry while I was playing around with her and at this time I had my stereo on and her crying scared me, because I figured someone might hear her. I don't remember how I got a string in my hand but I do remember it was in my hand but I remember putting the string around her neck and holding it tight. She appeared to be dead after I held the string around her neck and by this time it was dark and I put her in my car. . . ." In the statement defendant admitted fondling the girl, sticking his finger in her sex organ and trying to insert his penis in the girl's vagina. He stated he was unable to completely insert his penis and it was at this time when she started to scream and cry. He further stated he had an intention to have sexual relations with the girl when he first picked her up in his car. The written statement was admitted in evidence during the trial.

Contrary to what was in his statement defendant took the witness stand at the trial and denied molesting or strangling the girl. He admitted going to the apartment with the girl and her older sister. He stated he wanted to feed his cat. His story on the witness stand was entirely different from that in his written statement. He testified that the little girl was killed by her older sister in a fit of rage. He interceded while the older sister was strangling

the young girl with a rope. He stated the older sister further injured her young sister by hitting her on the head and in the crotch with a hammer while he was getting the rope released from the young girl's neck. He admitted on the witness stand that he disposed of the body by hauling it in his car and placing it on the property of Nutrena Mills where it was found. He denied the truth of the conflicting statements in his written confession as to his actions in molesting and strangling the girl and explained that he loved the older sister who was pregnant with his child and he wanted to protect her from the crime. The older sister testified that the defendant sexually assaulted her young sister and strangled her with a rope. Defendant steadfastly denied the truth of the prior statement. He testified he was taken to the police station and questioned by many officers from 11:00 a. m. to 3:00 p. m. He further testified that his brother was sitting in the hall outside the office during much of this time and the officers refused his request to have his brother in the office during the questioning. He testified he finally signed the statement to escape further interrogation. At that time it was around 8:00 o'clock p. m.

It is apparent after reading the entire record that, although there was some conflict in the testimony surrounding the taking of the written statement, there was substantial competent evidence to support the trial court's findings that the defendant voluntarily, knowingly and intelligently waived his constitutional rights and voluntarily confessed the crime of his own free will. Such findings will not be disturbed on appeal.

On this same point defendant points to testimony of a psychiatrist who examined the defendant on two separate occasions in preparation for trial. The psychiatrist characterizes defendant as being a schizophrenic, paranoid type. This doctor testified it was likely that the defendant's judgment would be impaired under stress. He further testified that it would be consistent with the behavioral pattern of such an individual to want to protect the mother of his child. Such testimony might support the credibility of defendant's testimony on the stand, as opposed to his previous written confession, but we find little evidence bearing upon insanity at the time the confession was given. There was sufficient competent evidence to indicate the written confession was knowingly and voluntarily given. This court can neither consider the credibility of the witnesses nor weigh the conflicting evidence. The evidence was reviewed by the trial judge prior to its submission

to the jury and both the judge and the jury had an opportunity to observe the conduct and demeanor of the witnesses and give proper weight thereto. The trial court properly admitted the confession of the defendant at the trial.

The third point raised by defendant concerns color photographs of the victim. The photographs were pertinent to the testimony of the witnesses and depicted the location and condition of the body where found. We are unable to find these pictures in the record and the defendant did not see fit to obtain permission to file the original exhibits in this court. However, it is apparent from the testimony of witnesses who personally viewed the scene where the body was found and from the testimony of the doctor who performed the autopsy that the pictures were relevant and material to the matters in issue.

In a crime of violence resulting in death photographs of the body at the location where found and photographs taken during an autopsy which serve to show the nature and extent of the wounds inflicted are generally admissible when they corroborate the testimony of witnesses. (*State v. Martin*, 206 Kan. 388, 390, 480 P. 2d 50; *State v. Campbell*, 210 Kan. 265, Syl. ¶ 6, 500 P. 2d 21; *State v. Reed*, 214 Kan. 562, 566, 520 P. 2d 1314.) We find nothing of a prejudciial nature introduced merely to inflame the jury.

We find no merit in the allegations of error and the judgment is affirmed.