No. 48,438

STATE OF KANSAS, *Appellee*, v. HARRY F. DUNCAN, *Appellant*.

(562 P. 2d 84)

Opinion filed March 5, 1977.

*M. C. Slough*, of Shawnee Mission, argued the cause and was on the brief for the appellant.

*Douglas J. Walker, Jr.*, assistant district attorney, argued the cause, and *Curt T. Schneider*, attorney general, and *Dennis W. Moore*, district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Harry F. Duncan was convicted by a jury of murder in the first degree (K. S. A. 21-3401). He was sentenced to im-

prisonment for life and appeals from his conviction and sentence.

He raises three trial errors including a claim of insufficient evidence to warrant a conviction. It is necessary to relate in detail the facts as developed by the evidence at the trial.

The nude body of an unidentified woman was discovered in a clump of trees along Frisby Road south of Bonner Springs in Johnson County, Kansas, on June 18, 1974. The body was found in a secluded area, had no teeth and was in a state of decomposition. The officers at the scene found no clues to the woman's identity. Items of clothing were found in a neat pile near the nude body. An autopsy disclosed that death was caused by several blows to the face and head by a heavy blunt instrument, such as a hammer. There was a fracture on the left side of the skull. The upper jaw was fragmented. The bones of the nose and nasal cavity had been fractured and there was an absence of bony structure around the left eye socket.

The deputy coroner who visited the scene placed the approximate date of death on June 15, 1974. He noted a lack of blood around the area and testified some 14 months later at the trial that the lack of blood might point to the fact that the death occurred elsewhere. The body was covered with fly larvae since the death had occurred in warm weather and the body was outdoors. He further testified that any blood spattered about during the homicide might disappear in the loose, sandy soil and be consumed by the large number of flies which were present.

Seven months after the body was found the police received a tip from an informer and defendant Duncan was arrested. Further investigation disclosed that sheriff's deputies had been in that general area three days before the body was found but at that time they were not aware of the presence of the body. They had been called to help two motorists stranded on Frisby Road at 5:00 a. m. on June 15, 1974. The motorists were Harry F. Duncan, defendant, and Beverly Jean Thompson. They had left their car and walked to the first house down the road but were advised to go to the next house. The couple went to the second house, were refused help and were walking on down the road when the officers arrived. The people in the second house had called the sheriff's office.

The couple advised the officers that the battery on their car had run down while they were making love in the car with the car lights on. The officers noticed nothing strange about their appearance and took them back to their car. The car was a mile

or so down the road and was parked near the clump of trees where the woman's body was found several days later. The officers used jumper cables to start the car. Mr. Duncan and Mrs. Thompson then drove away. The officers noticed no blood on the car and nothing strange about the area.

When Duncan was arrested for the murder 7 months later the foregoing facts surfaced and both Duncan and Mrs. Thompson were questioned. Duncan gave a statement to Detective Donald D. Hall. Mrs. Thompson testified at the trial as an eyewitness to the homicide. Her bizarre story was quite similar to the oral confession by Duncan. Duncan's statement or confession was related to Detective Hall and Detective Hall testified concerning the statements made to him by Duncan.

Mrs. Thompson testified that Duncan had been living with her for some time. They had been drinking on the night of June 14 and on the morning of June 15, 1974. They visited at least two night clubs where they engaged in drinking and then drove over to Kansas City, Missouri. Duncan was driving Mrs. Thompson's car and he picked up a woman somewhere on Broadway. They did not know the woman but she got into the car with them. Mrs. Thompson testified the woman was wearing a dark pullover top and a light pair of slacks. The woman carried no purse. The woman was advised they would take her some place to eat. They then drove to the area where the body was found, stopped the car and left the car lights burning. They all got out of the car and Duncan ordered the unknown woman to take off all her clothes. She did so and then Duncan picked up "something" and began to sexually molest her. He rammed a stick or "something" into her groin area, then he ordered her to lean against the car. He then stuck "something" into her rectum or possibly her vagina two or three times. Mrs. Thompson testified the woman did not utter a sound until Duncan attempted to cut or pinch off one of the woman's breasts and then the woman said, "I am a hurt woman". Duncan then started hitting the woman on the head and on the left side of her face with a hammer.

Mrs. Thompson testified that she attempted to intervene but was struck with the hammer and she retreated to the back of the car. She reported that three of her ribs were cracked by Duncan in the melee. She begged Duncan to take the woman to a hospital but he refused saying "he had to kill her". Mrs. Thompson said she watched Duncan drag the victim to a clump of trees. The

woman was still partially able to move under her own power. Ten minutes later Duncan returned with a hammer in his hand. Mrs. Thompson testified that when Duncan returned to the car the headlights were dim and they were unable to start the engine. They began walking down the road to obtain help, stopped at two houses and finally received help from the sheriff's officers.

On cross-examination she stated that her story to the officers about making love with the car lights on was untrue. She did not tell them about the murdered woman because she was in a state of shock and feared for her own life. Duncan had threatened and tortured her in the past. She testified that Duncan threw the hammer out of the car while they were driving home. During examination on the witness stand Mrs. Thompson stated she had first met Duncan when both were inpatients at the Rainbow Mental Health Unit at Osawatomie. When they were released Duncan came to live with her. Her former husband was in the penitentiary. Two weeks after Duncan was arrested her former husband, Wesley, was released and came to live with her.

The items of clothing found in the pile near the body of the victim, including a dark pullover top and a light pair of slacks, were identified by Mrs. Thompson as the clothes worn by the murder victim.

Detective Donald D. Hall testified that he interviewed Harry F. Duncan shortly after his arrest on January 19, 1975. The interview was conducted in the afternoon and lasted two or three hours. To the best of his recollection KBI Agent Jim Malson and Detective Dwight Cobb were present during the interview. The oral confession of Duncan, which Detective Hall related on the witness stand, followed closely the facts given by Mrs. Thompson. In addition, he related that Duncan advised him that when he had been drinking he had to torture a woman to get sexual release and reach a sexual climax. Duncan had previously used such means of reaching a sexual climax with Beverly Thompson.

Agent Malson was not available and did not testify at the trial. Detective Cobb testified that when he arrived in Detective Hall's office the interrogation of Duncan was underway. To the best of his recollection the interrogation of Duncan ended within five or ten minutes after he arrived. At no time while he was present did Duncan admit any part in the homicide or any knowledge thereof.

Defendant Duncan testified at the trial. He admitted drinking

with Mrs. Thompson on June 14 and 15, 1974, driving out on Frisby Road where the car stalled, receiving help from the officers and returning to Mrs. Thompson's home. He denied any knowledge of the unidentified woman, denied being in Kansas City, Missouri, and denied any part in the homicide. He admitted talking to Detective Hall in his office about the evening's activities on June 14, but stated he never admitted any knowledge of the murdered woman or said anything to indicate he had killed her. When asked if he heard Detective Hall's testimony on the stand, he said that Hall lied about what he had told the detective.

Various other witnesses testified on peripheral matters during the trial but their testimony need not be detailed here.

Defendant-appellant points to various matters in the evidence which are conflicting or questionable. He points out that the body of the victim bore no wounds in the groin, rectal or vaginal areas. There was an absence of blood in the area where the body was found, indicating that death had occurred elsewhere. The officers who helped the stranded motorists noticed no blood on the defendant's clothing or hands and none on or around the car when they raised the hood and applied the jumper cables. The story of Mrs. Thompson was incredible as to various details of the beating, especially when the woman's only outcry was, "I am a hurt woman". Mrs. Thompson, although interceding on behalf of the woman and being injured by Duncan, said nothing to the officers who helped them start the car.

Appellant further points out that Detective Hall's testimony was impeached by Detective Cobb who testified that he did not take part in the interrogation of Duncan, was present no more than five or ten minutes and heard no admission by Duncan that he committed the crime. Detective Hall testified a secretary was present and took notes during his interrogation of Duncan but the notes were not offered in evidence at the trial.

Because of these and other contradictions and conflicts appellant states the evidence on which the conviction stands is so inherently implausible and incredible that the probability of error should be too great for this court to tolerate. He cites selected cases from other jurisdictions in which other courts have reversed convictions based upon evidence termed so inherently incredible or inherently implausible a jury could not find a defendant guilty beyond a reasonable doubt. These courts have exceeded the accepted scope of appellate review in Kansas.

The first protection built into our system of justice is for the guidance of the jury. A jury must find a defendant guilty beyond a reasonable doubt before returning a guilty verdict. It is the prerogative of a jury to determine the credibility of witnesses, the weight to be given the evidence, and the reasonable inferences of fact which may be drawn from the evidence. (*State v. Gustin,* 212 Kan. 475, Syl. 3, 510 P. 2d 1290.) The second protection afforded an accused is placed in the hands of the trial court. It may be called on to assess the evidence both before and after a verdict is reached. A trial judge in passing on a motion for directed verdict of acquittal considers the evidence of the prosecution, keeping in mind the prerogative of the jury, and if he concludes no reasonable mind might fairly decide a defendant is guilty beyond a reasonable doubt of the crime charged, he must acquit the defendant and discharge him. (*State v. Wilson & Wentworth,* 221 Kan. 359, 559 P. 2d 374.) If the judge concludes upon the evidence a reasonable mind might fairly decide that a defendant is guilty beyond a reasonable doubt the case must be presented to the jury. (*State v. Gustin,* supra.) Then if a guilty verdict is reached the defendant may again test the evidence upon which the verdict is based by filing a motion to set aside the verdict and enter a judgment of acquittal. On a motion to set aside a verdict and enter a judgment of acquittal the trial court again determines whether the evidence is sufficient to sustain the conviction. (K. S. A. 22-3419.)

It is not until these protections have been afforded a defendant in a trial court that the case comes before this court. On appellate review the question is not whether the evidence establishes guilt beyond a reasonable doubt but whether the evidence was sufficient to form a basis for a reasonable inference of guilt. (*State v. Wilson,* 220 Kan. 341, Syl. 1, 552 P. 2d 931.)

Admittedly there is much that appears odd about the testimony in this case. However, it comes down to a matter of what testimony should be accepted as true. The rules of appellate review in Kansas were set out in *State v. Soverns,* 215 Kan. 775, 529 P. 2d 181:

"It is well settled that the credibility of witnesses will not be passed upon and conflicting evidence will not be weighed on appellate review. (*State v. Griffin,* 210 Kan. 729, 504 P. 2d 150.) A defendant has no cause to complain if the jury believed the state's witnesses rather than his own. (*State v. Mae McLaughlin,* 207 Kan. 584, 485 P. 2d 1352.) In considering the sufficiency

of evidence to sustain a conviction, this court looks only to the evidence which supports the verdict. It does not weigh the evidence and if the essential elements of the charge are supported by any competent evidence, the conviction must stand. (*State v. McCollum,* 211 Kan. 631, 507 P. 2d 196.) . . ." (p. 775.)

Here there was evidence sufficient to form a basis for a reasonable inference of guilt which is the scope of review applied to appeals in this court. We decline to adopt the rule urged by appellant. The rule of "inherent incredibility" requiring a reversal of a verdict "when the probability of error is too great to tolerate" is too general in nature to be satisfactorily applied. It would require this court in each case to invade both the province of the jury and of the trial court. It is not our function on appeal to retry the case.

As appellant's next point on appeal he asserts the trial court prevented him from introducing his testimony and that of Detective Cobb at the hearing to determine the admissibility of his oral statement. Under K. S. A. 22-3215 on motion a hearing is to be held to determine the admissibility of a confession. The burden of proving the admissibility of a statement or confession is upon the prosecution. (K. S. A. 22-3215 [4].) On motion it is the duty of the trial court, before admitting a purported confession into evidence, to conduct a hearing separate and apart from the jury to determine from the evidence as a preliminary matter whether the confession was freely and voluntarily made by the accused. (*State v. Wilson,* supra.) The inquiry is to determine whether the statement or confession was voluntary, and the determination must be based upon a consideration of the totality of the circumstances bearing on voluntariness. If the court determines that the statement or confession was the product of a rational intellect and a free will the statement or confession should be admitted into evidence. (*State v. Milow,* 199 Kan. 576, 433 P. 2d 538; *State v. Wilson,* supra.)

In *State v. Milow,* supra, it is stated:

"The reliability of a confession has nothing to do with its voluntariness— proof that a defendant committed the act with which he is charged and to which he has confessed is not to be considered when deciding whether a defendant's will has been overborne." (Syl. 6.)

Discrepancies in the facts not bearing on voluntariness or which relate to the credibility of a witness to a confession are irrelevant to the inquiry. (3 Wigmore, Evidence, § 822, p. 334, n. 21 [Chadbourn rev. 1970]; 23 C. J. S., Criminal Law, § 818, p. 197.) If the

statement or confession is voluntary the credibility of the witnesses and the weight to be given to the statement are left to the province of the jury and should be submitted at the trial. (K. S. A. 22-3215 [5]; *State v. Wheeler*, 215 Kan. 94, 99, 523 P. 2d 722.) The trial judge has discretion in determining relevancy and should keep the inquiry within the proper bounds. However, the range of inquiry in such a collateral hearing should be broad and the inquiry must be based upon a consideration of the totality of the circumstances bearing on voluntariness.

At the hearing in this case the prosecution called but one witness, Detective Hall, who testified fully as to the facts and circumstances of the interrogation and the substance of the oral confession. He testified that various detectives were in and out of the room during the interrogation but that Agent Malson and Detective Cobb were present when the confession was made. The prosecution rested and the appellant's attorney then made the following request:

"Your Honor, due to the impact that this statement would have on the jury, we will request there were other people present and we would request that they be allowed to testify before *as to whether this statement was actually made in their presence* before the witness here is allowed to make the statement to the jury that he indicates the defendant made, because he now makes statements that have no relationship to the statement that was taken down or very slight relationship. It is completely different than what the defendant has allegedly said on the 19th or 20th day of January." (Emphasis added.)

The court then stated: "The defendant's application for an order directing the testimony of other persons, the Court rules upon the matter now before the Court is considered and denied."

There was no further request by the defendant to call witnesses, no prospective witnesses were suggested by name and no proffer of evidence was made. The court ruled that defendant's confession was freely and voluntarily given. As previously stated Detective Hall was examined and cross-examined during the trial concerning the facts and circumstances of the interrogation and the demeanor of the defendant. Detective Cobb testified and was later recalled to testify for the defense. He was not questioned regarding the voluntariness of defendant's statement and in fact stated he was present during the last five or ten minutes and heard nothing which would incriminate the defendant. Defendant testified during the trial and flatly denied that he confessed to the crime. He denied telling Detective Hall about picking up a woman in Kansas City and killing her on Frisby Road.

In a motion for new trial defendant alleged that the trial court

erred in denying defendant's motion to present evidence on the voluntariness of the confession. In denying the motion for new trial the trial court stated:

"The Court after hearing and considering the defendant's motion for a new trial finds that the *defendant did not request an opportunity to present evidence on the voluntariness* of his alleged confession.

"That the *defendant did not request an opportunity to present his own testimony as to voluntariness,* but rather suggested to the Court as I recall that the state in substance be allowed to or be required to call other witnesses who were alleged to have been present to determine whether the statement or confession was actually made in their presence, and *apparently to determine the truthfulness of the alleged confession.*

"The Court certainly did not at the time the request was made, consider it as a request by the defendant to present evidence on the voluntariness of his confession, alleged confession, and does not after reviewing the record consider it as an application on the part of the defendant to present evidence in regard to the voluntariness of the defendant's alleged confession." (Emphasis added.)

We have previously held that a trial court must hear all testimony offered by both the prosecution and the defendant bearing on the voluntariness of the confession when it hears a motion filed under K. S. A. 22-3215. When a defendant has not been allowed to testify or call witnesses at such a hearing we have found reversible error. See *State v. Milow,* supra, and *Barnes v. State,* 204 Kan. 344, 357, 461 P. 2d 782. In such circumstances we have remanded the cases for a collateral hearing in the trial court to determine the voluntariness of the confession. If at the conclusion of such a hearing on remand the trial court considers the confession was voluntary, a new trial is unnecessary and the conviction stands affirmed. If the confession is found by the court to be involuntary, a new trial is ordered and the confession is then excluded from evidence. (*State v. Milow,* supra, p. 590.) We should not be understood as retreating from our position in the above cases; however, there are two matters apparent in the present case which compel us to the decision that if there was error on the part of the trial court the error was harmless beyond a reasonable doubt. The first is, that the evidence which defendant states should have been permitted is not relevant on the issue of voluntariness as indicated by the court in ruling on the motion for new trial.

The second is, that if sent back for a consideration of the evidence the trial judge would hold the confession to be voluntary even after hearing the testimony of the defendant and Detective Cobb. Their testimony was taken at the trial and is available in

the record. The defendant did not contend the confession was involuntary. See *State v. Watkins*, 219 Kan. 81, 547 P. 2d 810. He testified that he signed the written waiver of *Miranda* rights prior to the interview but that he did not confess and that Detective Hall lied. Detective Cobb did not testify that the confession was involuntary. He merely stated that he was present only a short time and defendant confessed to nothing while he was present. We were informed on oral argument that Agent Malson, the only other possible witness, had moved out of the country and could not be called to testify. Since Agent Malson was a law enforcement officer working for the KBI it is extremely doubtful that his testimony would be helpful to the defendant, even if he might be found.

The determination of the relevance of evidence bearing on voluntariness and its admissibility for that purpose rests within the sound discretion of the trial court in the first instance. This court will not reverse the trial judge on a discretionary matter except for an abuse of discretion which affirmatively appears to have affected the substantial rights of the party complaining. See K. S. A. 60-2105 and *State v. Winston*, 214 Kan. 525, 530, 520 P. 2d 1204; see also 29 Am. Jur. 2d, Evidence, § 585, p. 642. We find no abuse of discretion which affirmatively appears to have affected the substantial rights of the defendant at the hearing.

The final point raised by appellant concerns a ruling on admissibility of evidence. On cross-examination defense counsel questioned Detective Hall on whether the crime could have been committed elsewhere and the body disposed of along Frisby Road. The state objected on the ground the question asked "for a conclusion, or asking the witness to conjecture." The objection was sustained. The witness had just testified that he did not view the body at the scene and was not familiar enough with the case to interview the defendant without the help of other detectives. When the testimony sought requires proper foundation and knowledge to express an opinion. and it is not shown the witness has such knowledge, the opinion testimony is so conjectural as to lack probative value and may be properly excluded by a trial court. (*State v. Zimmer*, 198 Kan. 479, 502, 426 P. 2d 267, cert. den. 389 U. S. 933, 19 L. Ed. 2d 286, 88 S. Ct. 298.)

K. S. A. 60-419 provides:

"As a prerequisite for the testimony of a witness on a relevant or material matter, there must be evidence that he or she has personal knowledge thereof, or experience, training or education if such be required. . . ."

The question asked of Detective Hall in this case called for opinion testimony. The trial court is vested with discretion in receiving expert or other opinion testimony. See K. S. A. 60-456 (*a*) and cases listed in case annotations following this statute.

Even if we assume it was error in this case to exclude the evidence such error would be cured by the testimony of other witnesses who testified on the same subject. See *State v. Zumalt*, 202 Kan. 595, 451 P. 2d 253. The deputy coroner and another police officer who were at the scene gave testimony that the lack of blood in the area and the neat pile of clothes beside the nude body indicated that death might have occurred elsewhere. The trial court did not err in restricting the testimony of Hall on this subject. Hall had not visited the scene and had no sufficient information from which an opinion could be expressed.

The judgment is affirmed.

MILLER, J., dissenting:

I respectfully disagree with the conclusion reached by the majority in the matter of the *Jackson v. Denno* hearing and the voluntariness of the defendant's confession.

The defendant, Harry F. Duncan, was arrested by Detective Donald D. Hall of the Kansas City Police Department around 10 o'clock p. m. on January 19, 1975. It is not clear from the record whether a complaint was filed and a warrant was issued prior to the arrest or whether the arrest was made without a warrant. At any rate, it appears that the officer's attention was directed toward the defendant because of information provided by an undisclosed informant.

Duncan was taken to Kansas City police headquarters, where he was questioned until 1 or 2 o'clock the next morning, then locked up for the night.

On the following day he was not taken before a magistrate without unnecessary delay as is mandated by K. S. A. 22-2901. Instead, he remained in custody, without knowledge of any charges pending against him, and without counsel. At one o'clock in the afternoon—some fifteen hours after he was arrested—he was again interrogated by Detective Hall. The detective stated that he was not familiar enough with the case (the body having been found in Johnson County, outside his jurisdiction) to conduct an intelligent interview, so he secured the attendance of Detective Dwight Cobb of the Johnson County sheriff's office and KBI Agent Jim

Malson. Detective Hall stated that Detective Cobb and Agent Malson were present and participated throughout the interview, which lasted from two to three hours. Both were present when Duncan admitted involvement in this crime. Also present was a secretary who took notes. Hall testified that the defendant waived his *Miranda* rights and confessed to the homicide, admitting that he committed the offense almost exactly as described by Mrs. Beverly Thompson.

Duncan flatly denied that he made any confession. Detective Cobb was called as a witness both by the prosecution and the defense. He stated that he was present for only a short time during the interview in Detective Hall's office, and while he was there *he did not hear the defendant confess to anything.*

Agent Malson was not called as a witness. In light of the surprising testimony of Detective Cobb, I cannot agree with the majority's conclusion that "it is extremely doubtful that (Agent Malson's) testimony would be helpful to the defendant." The secretary, who allegedly took notes of the "confession," did not testify. Her notes were not introduced in evidence. A written statement, approximately one and one-third letter-sized pages in length, was prepared but never signed. That statement was not received in evidence and is not before us. It does appear from the record, however, that the written statement differs materially from the oral statement related in the testimony of Detective Hall.

The only testimony before the court at the *Jackson v. Denno* hearing was the testimony of Detective Hall. Defendant urged the court to hear the testimony of other persons who were present, but the court summarily denied the motion and ruled that the defendant had made a confession and that he had done so voluntarily.

We indicated in *State v. Milow,* 199 Kan. 576, 433 P. 2d 538, that the preliminary hearing on the voluntariness of a confession should not be *pro forma;* the range of inquiry should be broad and the court should consider the totality of the circumstances. The procedure should be "fully adequate to insure a reliable and clear-cut determination of the voluntariness of the confession." *Jackson v. Denno,* 378 U. S. 368, 12 L. Ed. 2d 908, 84 S. Ct. 1774, 1 A. L. R. 3d 1205.

I recognize that in the case at hand, the defendant does not contend that his confession was involuntary; instead he claims that he *made no confession.* The state claims that Cobb, Malson and the secretary heard defendant confess. Cobb testified that he did not

hear it. If Malson and the secretary also state that *they heard no confession,* can it be held, on the strength of Detective Hall's testimony alone, that Duncan confessed, and that he did so voluntarily? I think not.

Under the circumstances I would remand and direct the trial court to conduct an adequate evidentiary hearing and then to determine whether the defendant voluntarily made a confession. If the trial court determines that no voluntary confession was made, a new trial should be granted; otherwise a new trial is unnecessary. This procedure was directed in *Jackson v. Denno,* supra; *State v. Milow,* supra; and *Baker v. State,* 204 Kan. 607, 464 P. 2d 212. I believe the same resolution should be made of this case.

FATZER, C. J., joins in the foregoing dissenting opinion.